**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHECKPOINT SYSTEMS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ALL-TAG SECURITY S.A., | : Civil Action No. 01-2223 (PBT) |
| ALL-TAG SECURITY AMERICAS, INC., | : |
| and | : |
| SENSORMATIC ELECTRONICS CORP., | : |
| | : |
| Defendants. | : |
| | : |

_____

**ORDER AND JUDGMENT**

_____

AND NOW, this ____ day of _____, 2009, upon consideration of (1)

Defendants All-Tag Security S.A. and All-Tag Security Americas, Inc.'s Bill of Attorney Fees

and Expenses, (2) Bill of Attorneys' Fees and Expenses of Defendant Sensormatic Electronics

Corp., and (3) Checkpoint Systems, Inc.'s Objections to All-Tag Defendants and Sensormatic's

Bills of Attorneys' Fees and Expenses, it is hereby ORDERED that Checkpoint's Objections are

GRANTED and JUDGMENT is ENTERED in favor of defendants All-Tag Security S.A., All-

Tag Security Americas, Inc. and Sensormatic Electronics Corp. in the amount of $_____ on their

respective bills of attorneys' fees and expenses.

BY THE COURT,

_____

Hon. Petrese B. Tucker, U.S.D.J.

PHDATA 3174907_1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHECKPOINT SYSTEMS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 01-2223 (PBT) |
| | : | |
| ALL-TAG SECURITY S.A., | : | |
| ALL-TAG SECURITY AMERICAS, INC., | : | **ORAL ARGUMENT REQUESTED** |
| and | : | |
| SENSORMATIC ELECTRONICS CORP., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHECKPOINT SYSTEMS, INC.'S OBJECTIONS**
**TO ALL-TAG DEFENDANTS AND**
**SENSORMATIC'S BILLS OF ATTORNEYS'**
**FEES AND EXPENSES**

Dennis R. Suplee
   dsuplee@schnader.com
Thomas W. Hazlett
   thazlett@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000
  *Attorneys for Plaintiff,*
  *Checkpoint Systems, Inc.*

Dated:  March 6, 2009

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ................................................................................................................ 1

I.      THE ALLEGED CONDUCT SUPPORTING THE "EXCEPTIONAL CASE"
        FINDING DOES NOT JUSTIFY ANYTHING MORE THAN A NOMINAL
        AWARD OF ATTORNEYS' FEES TO DEFENDANTS. ...................................1

        A.      Defendants' "Inequitable Conduct" Theory Is Inconsistent With Federal
                Circuit Law And Does Not Justify Anything More Than A Nominal Fee
                Award.................................................................................................... 2

        B.      Defendants' Purported "Evidence" That This Case Was Baseless Or
                Brought In Bad Faith Does Not Justify Anything More Than A Nominal
                Award Of Attorneys' Fees. ........................................................................ 4

                1.      Even assuming this is an "exceptional" case, Checkpoint's
                        successes in this lawsuit demonstrate that a $6.6 million fee award
                        is not justified.............................................................................. 4

                2.      Defendants' purported "evidence" of bad faith does not justify an
                        award of $6.6 million in fees. ........................................................ 6

                        a.      Checkpoint's pre-filing investigation is not demonstrative
                                of bad faith. ....................................................................... 7

                        b.      There is insufficient evidence to warrant an award of
                                anything more than nominal fees on the basis of
                                Checkpoint's alleged failure to examine the "Accused
                                Products.".......................................................................... 9

                        c.      Any finding based on Checkpoint's pre-litigation business
                                conduct or size does not warrant anything more than an
                                award of nominal attorneys' fees..................................... 11

        C.      Alternatively, in Exercising its Discretion to Determine an Appropriate
                Award, the Court Should Exclude Legal Fees and Expenses Incurred for
                Matters on Which Defendants Did Not Prevail. ....................................... 12

                1.      The All-Tag Defendants' Bill of Attorneys' Fees and Costs Seeks
                        $298,837.94 for Matters On Which All-Tag Lost. ....................... 12

                2.      Sensormatic Seeks $788,241.46 in Legal Fees and Expenses for
                        Matters On Which It Did Not Prevail. .......................................... 14

II.   SENSORMATIC SHOULD NOT BE AWARDED $482,289.41 IN
      ATTORNEYS' FEES AND EXPENSES THAT WERE NOT RELATED TO
      ANY WORK COUNSEL PERFORMED IN THIS CASE OR THAT WERE
      NOT SUPPORTED BY ANY EVIDENCE OF THE ACTUAL TASKS
      PERFORMED. ..................................................................................................15

III.  DEFENDANTS ALL-TAG SECURITY, S.A. AND ALL-TAG SECURITY
      AMERICAS, INC. DID NOT INCUR THE VAST MAJORITY OF THE
      ATTORNEYS' FEES AND EXPENSES SOUGHT. ..........................................17

CONCLUSION.......................................................................................................... 20

PHDATA 3174907_1

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Allied Colloids, Inc. v. Am. Cyanamid Co.*,
    64 F.3d 1570 (Fed. Cir. 1995)..................................................................3

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989).............................................................1, 4

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005)................................................................11

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
    412 F.3d 1331 (Fed. Cir. 2005)..................................................................5

*Chiron Corp. v. Sourcecf Inc.*, No. C 05-01938 WHA,
    2006 U.S. Dist. LEXIS 52589 (C.D. Cal. June 16, 2006) .........................5

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
    279 F.3d 1022 (Fed. Cir. 2002)..................................................................8

*Five Star Mfg, Inc. v. Ramp Lite Mfg, Inc.*,
    196 F. Supp. 2d 1170 (D. Kan. 2002).........................................................5

*FMC Corp. v. Manitowoc Co., Inc.*
    835 F.2d 1411 (Fed. Cir. 1987).............................................................4, 5

*Forest Labs. Inc. v. Abbott Labs.*,
    339 F.3d 1324 (Fed. Cir. 2003)............................................................3, 11

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
    820 F.2d 1209 (Fed. Cir. 1987)..................................................................1

*General Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983)..................................................................................17

*Hildebrand v. Steck Mfg. Co., Inc.*, No. 02-cv-01125-LTB,
    2007 U.S. Dist. LEXIS 61508 (D. Colo. Aug. 15, 2007) ..........................5

*Kao Corp. v. Unilever U.S., Inc.*,
    441 F.3d 963 (Fed. Cir. 2006)....................................................................2

*McKesson Info. Solutions Inc. v. Bridge Med., Inc.*, No. S-02-2669,
    2006 U.S. Dist. LEXIS 63589 (E.D. Cal. Sept. 6, 2006)...........................5

PHDATA 3174907_1

*NPF, Ltd. v. Smart Parts, Inc.*, No. 04-C-221-S,
    2005 U.S. Dist. LEXIS 11479 (W.D. Wis. June 2, 2005) ..........................................................5

*S.C. Johnson & Son, Inc. v. Carter Wallace, Inc.*,
    781 F.2d 198 (Fed. Cir. 1986)..........................................................................................................2

*Special Devices, Inc. v. OEA, Inc.*,
    269 F.3d 1340 (Fed. Cir. 2001)......................................................................................................1

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004)......................................................................................................4

*United States v. U.S. Steel Corp.*,
    251 U.S. 417 (1920).....................................................................................................................11

## FEDERAL STATUTES

28 U.S.C. § 1927 ...............................................................................................................................2

35 U.S.C. § 285.......................................................................................................................*passim*

## RULES

FED. R. CIV. P. 11 ...............................................................................................................................2

FED. R. CIV. P. 50...........................................................................................................................5, 6

PHDATA 3174907_1

Plaintiff Checkpoint Systems, Inc. objects to the bills of attorneys' fees and expenses filed by defendants All-Tag Security S.A. ("All-Tag Belgium"), All-Tag Security Americas, Inc. ("All-Tag Americas") (collectively "All-Tag") and Sensormatic Electronics Corp. In their bills of attorneys' fees and expenses, All-Tag and Sensormatic request judgment against Checkpoint for approximately $6.6 million.  In these objections, Checkpoint does not challenge the specific rates of defendants' counsel or the reasonableness of the time spent on various particular tasks.  Rather, Checkpoint's objections are based on the overall equitable issues that the Court should consider in making any award of attorneys' fees and costs under 35 U.S.C. § 285 and certain categories of attorneys' fees and expenses that should not be recoverable, no matter what.

## ARGUMENT

### I.   THE ALLEGED CONDUCT SUPPORTING THE "EXCEPTIONAL CASE" FINDING DOES NOT JUSTIFY ANYTHING MORE THAN A NOMINAL AWARD OF ATTORNEYS' FEES TO DEFENDANTS.

In determining the amount of attorneys' fees to award, the Court must consider Checkpoint's alleged misconduct.  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989) (holding that "the trial judge's failure to take into account the particular misconduct involved in determining the amount of [attorneys'] fees was an abuse of discretion").  The "amount of attorney fees depends on the extent to which the case is exceptional.  In other words, the exceptionality determination *highly* influences the award setting."  *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001) (emphasis added).  The closeness of the case, the tactics of counsel, the conduct of the parties, and the interests of justice are all relevant factors for the Court to consider.  *See Gardco Mfg., Inc. v.*

*Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987); *S.C. Johnson & Son, Inc. v. Carter Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986).[1]

Checkpoint respectfully submits that this case does not justify an award of anything close to the approximately $6.6 million in fees defendants seek.  The grounds on which this fee request turns – Checkpoint's purported "inequitable conduct" and supposedly frivolous lawsuit – would warrant only a nominal amount of attorneys' fees.[2]  ***First***, defendants' "inequitable conduct" theory is flatly contradicted by Federal Circuit case law because defendants never alleged, much less proved by clear and convincing evidence, that Checkpoint fraudulently procured the '555 Patent.  ***Second***, this case could not be that exceptional because Checkpoint prevailed on many significant issues before the jury's adverse verdict.  ***Finally***, the evidence of Checkpoint's alleged subjective bad faith was not clear enough – indeed, it was hotly disputed –to justify defendants' full request for attorneys' fees.

> **A.      Defendants' "Inequitable Conduct" Theory Is Inconsistent With Federal Circuit Law And Does Not Justify Anything More Than A Nominal Fee Award.**

Federal Circuit law is clear that in order to recover fees for Checkpoint's purported "inequitable conduct," defendants had to show that Checkpoint engaged in fraud or other misconduct in procuring the patent.  *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 971-

---

[1]      The amount of attorneys' fees awarded in an exceptional case may even be zero. *S.C. Johnson & Son, Inc.*, 781 F.2d at 201.

[2]      Checkpoint assumes that the Court's February 9, 2009 Order was entered on these grounds because defendants never accused Checkpoint of litigation misconduct in support of their exceptional case finding.  Nor did they seek sanctions or fees under either Rule 11 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927.

PHDATA 3174907_1

73 (Fed. Cir. 2006); *Forest Labs. Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003); *Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995).  Accordingly, defendants' "inequitable conduct" theory fails here because they never even alleged that Checkpoint committed such fraud.  Instead, defendants deliberately confuse the alleged facts supporting their equitable defenses with the "inequitable conduct" – *i.e.*, fraud on the Patent Office – required to recover fees under § 285.  *See*, *e.g.*, Mot. of Sensormatic Elec. Corp. for "Exceptional Case" Findings & for Attys.' Fees at 6 [Dkt. No. 279]; All-Tag Sec. S.A. & All-Tag Sec. Am., Inc.'s Mot. for Defs.' Atty. Fees at 18 [Dkt. No. 280]; 1/15/2009 Hearing Tr. at 16, 27.[3]

        Defendants' attempt to recover attorneys' fees because the jury returned a favorable advisory verdict on their equitable estoppel and laches defenses has been soundly rejected by the Federal Circuit.  In *Forest Labs*, the Federal Circuit reversed a $6.5 million attorneys' fee award where, as defendants urge here, the trial court based its award on the losing party's equitable estoppel conduct.  339 F.3d at 1329.  In overturning that § 285 fee award, the Federal Circuit held that the patentee's "equitable estoppel conduct was not an appropriate basis for awarding attorneys' fees under § 285" and that the district court's reliance on that ground was legal error.  *Id.*  The court further explained that the "consequence of estoppel is the loss of the cause of action, and we have not extended the consequences to include attorney fees under the rubric of exceptional case."  *Id.* (internal citation omitted).

---

[3]     For the Court's convenience, we attach as Exhibit A all transcript excerpts cited in these Objections in chronological order, from earliest to most recent.

Thus, defendants' "inequitable conduct" theory cannot support any amount of attorneys' fees under § 285.

**B.      Defendants' Purported "Evidence" That This Case Was Baseless Or Brought In Bad Faith Does Not Justify Anything More Than A Nominal Award Of Attorneys' Fees.**

Defendants' claim that their $6.6 million fee request is warranted by the purported frivolousness of this case and existence of bad faith is similarly misplaced.  The Court ruled in Checkpoint's favor on several significant issues and allowed the jury to resolve this dispute – hardly the earmarks of a completely meritless lawsuit.  Furthermore, it would be inappropriate to award defendants millions of dollars in attorneys' fees based upon disputed (not clear and convincing) evidence of subjective bad faith.

**1.      Even assuming this is an "exceptional" case, Checkpoint's successes in this lawsuit demonstrate that a $6.6 million fee award is not justified.**

Defendants are not entitled to their fee request because the infringement, invalidity and enforceability issues were so close that they went to the jury.  In *Sulzer Textil A.G. v. Picanol N.V.*, the Federal Circuit affirmed the trial court's refusal to award fees under § 285 following a jury verdict in favor of the accused infringer, holding that "it is difficult to conceive of a 'baseless' claim that survived summary judgment."  358 F.3d 1356, 1370 (Fed. Cir. 2004). Similarly, in *Beckman Instruments, Inc.*, the Federal Circuit reduced a $2 million fee award, and stated that it was hard to find defendant's theory "baseless when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts."  892 F.2d at 1551.  Finally, in *FMC Corp. v. Manitowoc Co., Inc.*, the court affirmed the district court's refusal to award fees, holding that in light of the denial of FMC's summary judgment motion its

"assertion that Manitowoc's infringement claim was frivolous is without merit." 835 F.2d 1411, 1414 (Fed. Cir. 1987). These cases provide a compelling reason for this Court to significantly limit defendants' fee award.[4]

        Defendants' concession that "excellent results" are relevant to the Court's assessment of attorneys' fees, *see* Bill of Attys.' Fees & Exps. of Sensormatic Elec. Corp. at 2 [Dkt. No. 306]; All-Tag Sec. S.A. & All-Tag Sec. Am., Inc.'s Mot. for Atty. Fees at 2, supports the conclusion that Checkpoint's own litigation successes should substantially reduce the fee award. Checkpoint prevailed on claim construction. *See* Amended Mem. & Order, dated Feb. 16, 2007 [Dkt. No. 249]. Checkpoint won before the Federal Circuit on defendants' summary judgment motion based on incorrect inventorship. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331 (Fed. Cir. 2005). Checkpoint defeated summary judgment motions for non-infringement and on the laches and equitable estoppel defenses. Mem. & Order, dated Jan. 25, 2007 [Dkt. 221]. Finally, Checkpoint successfully opposed defendants' two Rule 50 motions,

---

[4]       District Courts across the nation have refused to award fees in circumstances similar to this case. *See, e.g, Hildebrand v. Steck Mfg. Co., Inc.*, No. 02-cv-01125-LTB, 2007 U.S. Dist. LEXIS 61508, at *7 (D. Colo. Aug. 15, 2007) (counterclaims were not frivolous under § 285 where such claims were defeated after jury trial); *McKesson Info. Solutions Inc. v. Bridge Med., Inc.*, No. S-02-2669, 2006 U.S. Dist. LEXIS 63589, at *26 (E.D. Cal. Sept. 6, 2006) (denying § 285 fee request in exceptional case and holding that successfully opposing summary judgment but losing at trial does not mean that a claim was baseless or pursued in bad faith to merit § 285 fees); *Chiron Corp. v. Sourcecf Inc.*, No. C 05-01938 WHA, 2006 U.S. Dist. LEXIS 52589, at *8 (C.D. Cal. June 16, 2006) (denying § 285 motion and holding that "[s]imply losing after trial does not make a case exceptional for purposes of Section 285, particularly where a party's claims have survived attack prior to trial."); *NPF, Ltd. v. Smart Parts, Inc.*, No. 04-C-221-S, 2005 U.S. Dist. LEXIS 11479, at *5 (W.D. Wis. June 2, 2005) (same); *Five Star Mfg, Inc. v. Ramp Lite Mfg, Inc.*, 196 F. Supp. 2d 1170, 1173 (D. Kan. 2002) (plaintiff's claim was not frivolous under § 285 where it lost before the jury, but had survived defendants' motions for summary judgment and judgment as a matter of law).

PHDATA 3174907_1

with the Court explicitly stating that "***the evidence is sufficient to go to the jury on the issue of infringement.***" *See* 2/12/07 N.T. 117:6-7 (emphasis added).

Checkpoint respectfully submits that, at bottom, only nominal fees, if any, are warranted here because there is no way to determine ***when*** the case became supposedly frivolous. That moment could not have been ***before*** trial when the Court rejected defendants' attempt to bar Dr. Zahn's testimony on the grounds that he never examined the "Accused Products." The case could not have been frivolous on the ***first day*** of trial when defendants offered to stipulate that the so-called "Product 1" labels infringed Checkpoint's '555 Patent. *See* 1/29/07 N.T. 69:12-15. It could not have been frivolous on the ***fourth day*** of trial when, at the close of Checkpoint's case-in-chief, the Court denied defendants' first Rule 50 motion. 2/1/07 N.T. 54:16-56:10. And, the case certainly could not have been without basis on the ***eleventh day*** of trial when the Court denied defendants' second Rule 50 motion and sent the case to the jury. 2/12/07 N.T. 117:3-7.

Thus, there is no basis to conclude that this litigation was so frivolous as to justify granting anything more than a nominal amount of attorneys' fees.

### 2.     Defendants' purported "evidence" of bad faith does not justify an award of $6.6 million in fees.

Defendants' claim that Checkpoint acted with subjective bad faith in asserting infringement was sharply disputed and thinly supported. ***First***, there is insufficient evidence of bad faith to justify defendants' full fee request because Checkpoint obtained two separate pre-filing infringement opinions supporting its claim. ***Second***, there is no basis to conclude that

Checkpoint deliberately failed to examine samples of the "Accused Products" allegedly produced by defendants in 2002. As demonstrated by the affidavit of its former attorney, Checkpoint never received the labels. Further, defendants concede that Checkpoint's expert, Dr. Zahn, tested so-called "Product 1" labels and he provided an opinion *accepted into evidence by the Court* as to why defendants' own admissions obviated the need to test the so-called "Product 2" labels. *Finally*, Checkpoint's size and business conduct do not warrant the millions of dollars in attorneys' fees defendants have requested.

### a. Checkpoint's pre-filing investigation is not demonstrative of bad faith.

Neil Austin, Checkpoint's former general counsel, testified during his deposition that he obtained infringement opinions from two different lawyers before Checkpoint filed this suit.[5] Deposition of Neil Austin ("Austin Dep. Tr.") at 114-20. Indeed, defendants were so concerned by this testimony that they moved to exclude it from trial. *See* Defs.' Mot. in *Limine* to Preclude Intro. of Any Reference to Oral Legal Ops. Received by Checkpoint. The Court denied that motion. Order, dated Jan. 31, 2007 [Dkt. No. 220]. As the Court will recall, Checkpoint advised that it did not intend to offer such evidence in its case-in-chief to prove defendants' infringing conduct, but reserved the right to present such evidence to rebut any argument by defendants that, among other things, Checkpoint had no basis for this lawsuit.

---

[5] Defendants attached portions of Mr. Austin's deposition testimony to a motion in *limine* regarding infringement opinions Checkpoint held. Defs.' Mot. in *Limine* to Preclude Intro. of Any Reference to Oral Legal Ops. Received by Checkpoint [Dkt. No. 187]. For the Court's convenience, Checkpoint attaches relevant excerpts from Mr. Austin's deposition to these Objections.

Checkpoint Mem. in Opp. To Defs.' Mot. In *Limine* on Oral Legal Ops. of Infringement & Validity [Dkt. 193].

Mr. Austin specifically testified that he received a pre-suit opinion from Checkpoint's attorneys in Switzerland who were handling Checkpoint's (successful) patent litigation against All-Tag Security A.G. ("All-Tag Switzerland") involving the Swiss counterpart to the '555 Patent.  Austin Dep. Tr. at 114-17.  In connection with the proceedings in that case, Swiss counsel advised Mr. Austin that All-Tag's products would similarly infringe the claims of the '555 Patent.  *Id*.  In addition, Mr. Austin testified that he later obtained a second infringement opinion from a patent attorney named Leslie Kasten.  *Id*. at 118-20.  Mr. Kasten, like Checkpoint's Swiss counsel, advised Mr. Austin that the All-Tag products infringed Checkpoint's '555 Patent.  *Id*.  Thus, there is no doubt that Checkpoint obtained two infringement opinions before filing this lawsuit.

But, even if Checkpoint had not obtained an adequate pre-filing infringement opinion, Federal Circuit precedent precludes defendants from recovering the fees they seek.  In *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, the Federal Circuit affirmed the trial court's denial of the prevailing accused infringer's § 285 fee request, finding no evidence of bad faith based on the patentee's failure to obtain a favorable pre-filing infringement opinion.  279 F.3d 1022, 1035 (Fed. Cir. 2002).  In so holding, the Federal Circuit explained that where, as here, "the evidence of direct infringement is sufficient to preclude summary judgment, [the] failure to obtain a favorable infringement opinion prior to filing suit is of diminished significance."  *Id*.  So even if Checkpoint had not obtained pre-litigation opinions (which it did), that would be of no consequence because here, too, plaintiff's evidence was sufficient to defeat summary judgment.

PHDATA 3174907_1

**b.** **There is insufficient evidence to warrant an award of anything more than nominal fees on the basis of Checkpoint's alleged failure to examine the "Accused Products."**

Checkpoint did not deliberately fail to test samples of the "Accused Products" out of concern that the test results would harm its infringement case. As the Court will recall, there was debate at trial regarding whether defendants did or did not produce samples of the "Accused Products" in discovery. *See* 2/9/07 N.T. at 3:11-8:25, 75:11-97:4. Checkpoint obtained a sworn affidavit from its former counsel, James D. Cashel of Montgomery McCracken Walker & Rhoads LLP, in which he averred that "All-Tag did not produce" labels to Checkpoint's counsel.[6] Cashel Aff. at ¶ 6. After considering the contents of Mr. Cashel's affidavit, the Court observed that although labels might have been mailed, "***whether or not they were received is an issue.***" 2/9/07 N.T. at 92:10-11, 93:14-19, 94:10-17 (emphasis added). That fact issue, however, was never resolved at trial because the parties stipulated that "***neither party shall argue*** to the jury that defendants ***did or not produce*** the accused All-Tag products to plaintiff in discovery." *Id*. at 96:4-23 (emphasis added). Given (a) that the jury was never asked to resolve the question whether Checkpoint received such tags, (b) that the Court never heard testimony from any of the affiants, and (c) that (as the Court itself noted) there was no necessary conflict between the affidavits (one saying the labels were mailed and the other saying they were not received), this side issue cannot be the basis for a finding of bad faith.

The record also illustrates that Dr. Zahn examined the "Accused Products." Significantly, the Court allowed Dr. Zahn to testify at trial, over defendants' *Daubert* objections,

---

[6]     Although the Court previously reviewed Mr. Cashel's affidavit during trial, *see* 2/9/07 N.T. 82:10-19, a copy is attached for the Court's convenience as Exhibit B.

regarding infringement by both All-Tag's "Product 1" and "Product 2" labels.  And, over defendants' repeated authenticity and foundation objections, the Court admitted the labels Dr. Zahn tested into evidence.[7]  1/31/07 N.T. at 5:25-16:20.  The Court will recall that Dr. Zahn testified at trial that, just the day before taking the stand, he compared the serial numbers on the All-Tag labels that he examined in his lab with the serial numbers disclosed for All-Tag's labels on the All-Tag website.  1/31/07 N.T. at 7:4-24.  That comparison revealed that the labels Dr. Zahn tested had the same exact serial numbers as the labels that All-Tag was selling as of January 29, 2007.[8]  *Id.*

Accordingly, defendants' outlandish theory that Checkpoint schemed in bad faith to withhold the "Accused Products" from its own infringement expert is entirely unsubstantiated, is contradicted by the undisputed facts of record, and cannot justify the award of attorneys' fees and expenses that defendants have requested.

---

[7]     In addition to testing so-called "Product 1" labels in his lab, Dr. Zahn reviewed patents that, according to defendants' admissions, disclose the structure and methods for making the "Product 1" and "Product 2" labels.  1/30/07 N.T. at 215:14-18; 2/12/07 N.T. at 32:16-33:19, 38:10-39:3.  Based on these judicial admissions, coupled with the Court's construction of "throughhole," Dr. Zahn concluded that he did not need to physically test "Product 2."  *See*, *e.g.*, 2/12/07 N.T. 45:14-46:6.  All-Tag's CEO admitted at trial that he too would examine All-Tag's patents to understand "everything about how [All-Tag] actually makes [its] product."  2/2/07 N.T. at 142:20-25.

[8]     In fact, All-Tag's counsel admitted at trial that All-Tag has only "made ***two basic products throughout its existence***."  1/29/07 N.T. 67:11-21 (emphasis added).  And All-Tag's Chairman, Dominique Blieck, explained that after All-Tag moved from Switzerland to Belgium in 1995 (over the course of a week), it used the same machines to make the same labels in Belgium as it did in Switzerland.  2/2/07 N.T. at 25:23-26:11.

   c.   **Any finding based on Checkpoint's pre-litigation business conduct or size does not warrant anything more than an award of nominal attorneys' fees.**

Defendants complain mightily about Checkpoint's supposed pre-litigation behavior and aggressive business tactics.[9]  But the Federal Circuit has held such arguments irrelevant to assessment of attorneys' fees under § 285.  *See*, *e.g.*, *Forest Labs, Inc.*, 339 F.3d at 1329 (holding that a patentee's pre-litigation business conduct does not justify a finding of bad faith under § 285).  Similarly irrelevant for the Court's fee determination are defendants' complaints that Checkpoint is a big company using it resources and patent portfolio to acquire competitors.  *See United States v. U.S. Steel Corp.*, 251 U.S. 417, 451 (1920) ("the law does not make mere size an offense").  Indeed, "a duly granted patent is a grant of the right to exclude all infringers, not just those of comparable size."  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1384 (Fed. Cir. 2005).

Accordingly, for all these reasons, this Court should grant defendants nothing more than a nominal amount of attorneys' fees.

---

[9]    Throughout trial and the "exceptional case" proceedings, defendants have repeated the chorus that Checkpoint's former general counsel, Neil Austin, threatened to bankrupt All-Tag and "bleed All-Tag with legal fees," during a July 9, 1997 meeting at All-Tag's facility in Belgium.  *See, e.g.,* Mot. of Sensormatic Elec. Corp. for "Exceptional Case" Findings & for Attys.' Fees at 23; All-Tag Sec. S.A. & All-Tag Sec. Am., Inc.'s Mot. for Defs.' Atty. Fees at 2.  Mr. Austin emphatically denied ever having made such comments.  2/9/07 N.T. at 124:22-125:15.  Further, Mr. Blieck's notes from the meeting contain no reference whatsoever to any such comments.  *See* Ex. D-329 at ATT 3236 (attached for the Court's convenience as Exhibit C).

PHDATA 3174907_1

**C.**     **Alternatively, in Exercising its Discretion to Determine an Appropriate Award, the Court Should Exclude Legal Fees and Expenses Incurred for Matters on Which Defendants Did Not Prevail.**

If, in the exercise of its discretion after considering all of the circumstances discussed above, the Court determines that defendants should receive more than a nominal amount, but less than what they have requested, Checkpoint respectfully submits that the Court should not award legal fees or expenses for those matters on which defendants did not prevail. Not only did defendants not prevail on many issues throughout the course of this litigation, in certain instances (such as All-Tag petitioning the Federal Circuit for re-hearing on defendants' inventorship summary judgment motion), defendants' unsuccessful efforts caused the parties to expend additional unnecessary time and resources on issues that did not contribute to the ultimate outcome of the case.

**1.**     **The All-Tag Defendants' Bill of Attorneys' Fees and Costs Seeks $298,837.94 for Matters On Which All-Tag Lost.**

All-Tag requests that it be awarded nearly $300,000 in legal fees and expenses for matters on which All-Tag lost. Based on review of the invoices All-Tag's counsel provided, these fees and expenses break down as follows:

| | Amt. of Attys.' Fees & Exp.[10] | Cite[11] |
|---|---|---|
| Summary Judgment Motion for Incorrect Inventorship on which Checkpoint prevailed in the Federal Circuit | $67,008.25 | Breiner firm invoices, dated 1/23/2002, 2/25/2002, 3/22/2002, 4/22/2002, 10/25/2002, 2/25/2003, 3/25/2003, 4/25/2003 |
| Appeal to the Federal Circuit on which Checkpoint prevailed | $104,298.44 | Breiner firm invoices, dated 5/31/2004, 6/30/2004, 7/19/2004, 8/16/2004, 9/27/2004, 10/20/2004, 11/15/2004, 12/20/2004, 1/25/2005, 2/25/2005, 3/25/2005, 4/29/2005, 5/26/2005, 6/15/2005, 7/20/2005, 8/23/2005 |
| Claim Construction of the '555 Patent on which Checkpoint prevailed | $99,071.25 | Breiner firm invoices, dated 4/22/2002, 5/29/2002, 6/26/2002, 7/26/2002, 8/27/2002, 9/20/2005, 10/25/2005, 11/28/2005 |
| Summary Judgment Motions for Non-Infringement, Laches/Equitable Estoppel Defenses on which Checkpoint prevailed | $28,460.00 | Breiner firm invoices, dated 8/7/2006, 9/19/2006 |
| TOTAL | $298,837.94 | |

The Court should take into consideration the legal fees and expenses incurred pursuing matters on which All-Tag lost to Checkpoint during the course of this case when evaluating All-Tag's bill of attorneys' fees and expenses.

---

[10]   The amounts shown are estimates based on our review of the invoices attached by All-Tag's counsel.  The invoices do not show a precise breakdown of time for each task performed, so we have included only those time entries in which the predominate task related to the matter on which defendants lost.

[11]   For the sake of efficiency and so Checkpoint need not file portions of its objections under seal with the Court, we cite to the invoices of defendants' counsel as attached to their bills of attorneys' fees and costs.

PHDATA 3174907_1

2.      **Sensormatic Seeks $788,241.46 in Legal Fees and Expenses for Matters On Which It Did Not Prevail.**

Sensormatic requests that it be awarded nearly $800,000 in legal fees and expenses for matters on which Sensormatic lost.  Based on review of the invoices Sensormatic's counsel provided, these fees and expenses break down as follows:

|  | **Amt. of Attys.' Fees & Exp.[12]** | **Cite** |
|---|---|---|
| Summary Judgment Motion for Incorrect Inventorship on which Checkpoint prevailed in the Federal Circuit | $166,593.87 | Morgan & Finnegan invoices, dated 2/28/2002, 3/25/2002, 4/15/2002, 11/11/2002, 2/25/2003, 3/31/2003, 5/15/2003 |
| Appeal to the Federal Circuit on which Checkpoint prevailed | $65,357.64 | Morgan & Finnegan invoice, dated 10/13/2004 |
| Claim Construction of the '555 Patent on which Checkpoint prevailed | $397,874.65 | Morgan & Finnegan invoices, dated 5/28/2002, 7/10/2002, 7/31/2002, 9/13/2002, 10/31/2005 |
| Summary Judgment Motions for Non-Infringement, Laches/Equitable Estoppel Defenses on which Checkpoint prevailed | $158,415.30 | Pepper Hamilton invoices, dated 8/21/2006, 10/5/2006 (three invoices for July, August and September time) |
| **TOTAL** | **$788,241.46** | |

The Court should take into consideration the legal fees and expenses incurred pursuing matters on which Sensormatic lost to Checkpoint during the course of this case when evaluating Sensormatic's bill of attorneys' fees and expenses.

---

[12]      These amounts also are estimates based on our review of the invoices attached by Sensormatic's counsel.  The Pepper Hamilton invoices do not show a precise breakdown of time for each task performed, so we have included only those time entries in which the predominate task related to the matter on which defendants lost.  We have utilized Pepper Hamilton's discounted hourly rates for purposes of these estimates.  The Morgan & Finnegan invoices do not provide any breakdown of time by attorney or date of work performed, so we have estimated the fees based on the overall description of work performed in a given month.

II.   **SENSORMATIC SHOULD NOT BE AWARDED $482,289.41 IN ATTORNEYS' FEES AND EXPENSES THAT WERE NOT RELATED TO ANY WORK COUNSEL PERFORMED IN THIS CASE OR THAT WERE NOT SUPPORTED BY ANY EVIDENCE OF THE ACTUAL TASKS PERFORMED.**

Sensormatic's bill of attorneys' fees includes over $480,000 in fees and expenses that are improper on their face.  The legal fees and expenses requested either have nothing to do with the work Sensormatic's counsel actually performed in this case, or are not supported with any information about the work that resulted in the fees and expenses being charged to Sensormatic.  Such fees and expenses are not "reasonable" attorneys' fees and should not be allowed by the Court.

Morgan & Finnegan Fees from Before Suit Was Filed.  Sensormatic's lead counsel in 2001, Morgan & Finnegan, billed $7,897.88 for attorneys' fees and expenses related to "Alltag Matter" in April 2001.  *See* April 30, 2001 Morgan & Finnegan invoice.  This was the month **before** Checkpoint filed suit against defendants.

Morgan & Finnegan Fees With No Documentation.  In support of its bill of attorneys' fees and expenses, Sensormatic for the most part (and appropriately in this context) submitted invoices from its counsel that included detailed descriptions of the tasks performed by counsel.  Such documentation is necessary for the Court to evaluate whether the legal fees and expenses incurred are "reasonable" for purposes of § 285.  However, for $424,391.53 in Morgan & Finnegan's fees and expenses billed on November 25, 2003 and between March 2005 and March 2008, Sensormatic did not include **any** description of the work performed by counsel.  Instead, Sensormatic included only the first summary page of Morgan & Finnegan's November 2003 invoice and what appear to be accounting software reports indicating gross amounts paid to

Morgan & Finnegan.  *See* Nov. 25, 2003 Morgan & Finnegan Invoice; Invoice Approval

Summaries.  It is impossible for the Court or Checkpoint to evaluate whether the $424,391.53 in

legal fees and expenses were reasonable or unreasonable.

      The Declaration submitted by Sensormatic's lawyer at Pepper Hamilton, Mr.

Tillery, stating that attorneys' fees were reasonable, does not cure Sensormatic's failure to

submit any documentary support.  Mr. Tillery does not state that he has direct knowledge of the

work that Morgan & Finnegan performed and, as a partner at Pepper Hamilton, he would have

no basis to make such a statement.  Notably, Sensormatic did not submit a sworn statement by

any of its Morgan & Finnegan lawyers.

      <u>Pepper Hamilton's "Litigation Bonus."</u>  Sensormatic seeks payment of $50,000 in

"Litigation Bonus" fees paid to Pepper Hamilton in December 2007.  According to the fee

arrangement between Sensormatic and Pepper Hamilton, the "Bonus" was paid because

Sensormatic prevailed at trial.  *See* Letter from R. Hickok to D. Lynch, dated Oct. 10, 2006

(attached as Exhibit D).  This "Bonus" should not be recoverable under § 285 because there was

no work performed by Sensormatic's counsel to earn the payment; counsel's receipt of the

"Bonus" was a matter of their good fortune.  If the jury had found for Checkpoint, Sensormatic

would never have paid this "Bonus" to its counsel.  This windfall for Sensormatic's counsel

should not be considered "reasonable" attorneys' fees.

*        *        *

PHDATA 3174907_1

Sensormatic's bill of attorneys' fees and expenses should be reduced by the $482,289.41 in fees and expenses requested that do not appear on their face to be reasonably related to the work performed in litigating this case.

## III.    DEFENDANTS ALL-TAG SECURITY, S.A. AND ALL-TAG SECURITY AMERICAS, INC. DID NOT INCUR THE VAST MAJORITY OF THE ATTORNEYS' FEES AND EXPENSES SOUGHT.

The purpose of an award of attorneys' fees and expenses to a defendant under § 285 is to restore the party to the position it would have been if the case had not been brought. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983).  But, All-Tag seeks reimbursement for costs incurred by another company, Kobe Properties Ltd., that was not a party to this case.  Fees and expenses incurred by a company other than All-Tag are not recoverable under the plain language of § 285.

All-Tag requests reimbursement of legal fees in the amount of $1,297,202.00 for Breiner & Breiner, L.L.C. and $310,304.71 for Reed Smith LLP (its local counsel), for a total of $1,607,506.71 in attorneys' fees.  All-Tag also requests $162,829.21 and $28,298.21 in legal expenses for the Breiner firm and Reed Smith, respectively, for a total of $191,127.42 (after deduction of $74,303.82 in costs awarded by the Clerk and already paid by Checkpoint, with interest).  But, in fact, according to the invoices submitted in support of All-Tag's Bill of Attorney Fees and Expenses, the vast majority of these legal fees and expenses were billed to Kobe Properties, ***not to All-Tag***.  *Compare* Sept. 20, 2001 Breiner firm invoice *with* Oct. 25, 2001 Breiner firm invoice.

17                                    PHDATA 3174907_1

For the four-month period from June through September 2001, the Breiner firm invoiced All-Tag Belgium for legal fees and disbursements, which included payments to Reed Smith.  *See*, *e.g.*, June 8, 2001 Breiner firm invoice (addressed to "All-Tag Security S.A." in "Manage, Belgium," to the "Attention:  Mr. Oliver Boels").  The Breiner firm resumed invoicing All-Tag Belgium in January 2008 and continued to do so through February 2009.  *See*, *e.g.*, Sept. 22, 2008 Breiner firm invoice.

However, for the entire intervening period from October 2001 through December 2007 – which included all discovery, motion practice, the proceedings before the Court of Appeals for the Federal Circuit and the trial in this Court – the Breiner firm invoiced not All-Tag, but Kobe Properties, which purportedly is located in "Douglas, Isle of Man" in the United Kingdom.  *See*, *e.g.*, Oct. 25, 2001 Breiner firm invoice; April 22, 2002 Breiner firm invoice; Aug. 16, 2004 Breiner firm invoice; Feb. 28, 2007 Breiner firm invoice.  The amount of legal fees and expenses All-Tag is requesting compared to the amount actually billed to All-Tag is stark:

- Of the $1,297,202.00 in Breiner firm legal fees All-Tag listed in its Bill, only $194,385.75 was billed to All-Tag.  The remaining $1,102,816.25 in Breiner firm legal fees was billed to Kobe Properties.

- Of the $162,829.21 in Breiner firm expenses (not including payments to Reed Smith as local counsel) All-Tag seeks, only $14,918.44 was billed to All-Tag.  The remaining $147,910.77 in Breiner firm expenses was billed to Kobe Properties.

PHDATA 3174907_1

- Of the $338,602.92 in Reed Smith legal fees and expenses All-Tag seeks, only $17,644.87 was billed to All-Tag. The remaining $320,958.05 was ultimately billed to Kobe Properties.[13]

Section 285 states that "The [C]ourt in exceptional cases may award reasonable attorney fees *to the prevailing party*." 35 U.S.C. § 285 (emphasis added). The language in § 285 is clear and unambiguous in specifying that it is only "the prevailing party," in this case the All-Tag defendants, that may be awarded reasonable attorneys' fees. Kobe Properties was *never* a party to this case, much less a prevailing party as required by § 285. Accordingly, All-Tag cannot recover under § 285 for attorneys' fees and expenses billed to Kobe Properties.

All-Tag's Bill and supporting Declarations refer to All-Tag "incurring" legal fees and expenses or All-Tag being sent invoices. These statements are flatly contradicted by the vast majority of the Breiner firm invoices, which are addressed to Kobe Properties, not to All-Tag. All-Tag has submitted a declaration that includes a one-sentence conclusory statement by its counsel saying that All-Tag paid the legal fees and expenses described in the invoices. *See* Decl. of Theodore A. Breiner at ¶ 16 (attached as Exhibit A to All-Tag Bill of Attys.' Fees & Exp.). No documentary evidence supports that assertion and the exhibit referred to in Mr. Breiner's Declaration is nothing more than a summary listing of payments and does not include anything to show the payments were made by All-Tag. *See id.* at Exhibit 5.

The Court should not allow All-Tag Belgium or All-Tag Americas, the prevailing parties under § 285, to recover for attorneys' fees and legal expenses paid by another company.

---

[13]     Reed Smith's invoices were submitted to the Breiner firm for payment, which invoiced the Reed Smith fees and costs as disbursements on its own bills. *See*, *e.g.*, Aug. 22, 2001 Reed Smith invoice (addressed to "Breiner & Breiner").

PHDATA 3174907_1

Accordingly, the Court should limit the attorneys' fees and expenses awarded to All-Tag to, at most, the $226,949.06 actually billed to All-Tag.

## **CONCLUSION**

Accordingly, Checkpoint requests that All-Tag's Bill of Attorney Fees and Expenses and the Bill of Attorneys' Fees and Expenses of Defendant Sensormatic Electronics Corp. be disallowed or substantially reduced.

Respectfully submitted

 /s/ Dennis R. Suplee
Dennis R. Suplee
   dsuplee@schnader.com
Thomas W. Hazlett
   thazlett@schnader.com
   *Attorneys for Plaintiff,*
   *Checkpoint Systems, Inc.*

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000
                              Of Counsel.

Dated:  March 6, 2009

PHDATA 3174907_1

## CERTIFICATE OF SERVICE

I hereby certify that, on March 6, 2009, I have caused a copy of the foregoing Checkpoint Systems, Inc.'s Objections to All-Tag Defendants and Sensormatic's Bills of Attorneys' Fees and Expenses to be served on defendants via the Court's ECF system, e-mail and as follows:

**Via First Class Mail**
Theodore A. Breiner, Esquire
Jennifer A. Harchick, Esquire
BREINER & BREINER, LLC
115 N. Henry Street
Alexandria, VA 22314

**Via Hand Delivery**
Tracy Zurzolo Quinn, Esquire
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
  *Attorneys for All-Tag Security S.A. and*
  *All-Tag Security Americas, Inc.*

**Via Hand Delivery**
M. Kelly Tillery, Esquire
Charles S. Marion, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
  *Attorneys for Sensormatic Electronics Corp.*

  /s/ Thomas W. Hazlett
Thomas W. Hazlett