**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHECKPOINT SYSTEMS, INC.** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **ALL-TAG SECURITY S.A., et al.** | : | **NO. 01-2223** |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM**

**TUCKER, C.J.**                                                        **August 18, 2015**

Presently before the Court are Defendants All-Tag Security S.A.'s, All-Tag Security

Americas, Inc.'s, Sensormatic Electronics Corporation's, and Kobe Properties SARL's renewed

motions for exceptional case findings pursuant to 35 U.S.C § 285 and motions for attorneys'

fees.  Upon consideration of the parties' supplemental briefs and exhibits, their oral arguments,

and the record of this case, this Court will GRANT the motions.

## I.   BACKGROUND

Because the Court writes primarily for the parties, it sets forth only those facts that are

relevant to its conclusion.  Plaintiff Checkpoint Systems, Inc. ("Checkpoint") brought this patent

infringement action against Defendants All-Tag Security S.A., All-Tag Security Americas, Inc.

(collectively "All-Tag"), and Sensormatic Electronics Corporation ("Sensormatic") for

infringing on Checkpoint's U.S Patent No. 4,876,555 ("the '555 patent").  The '555 patent

claims a resonance label, an antitheft device used by retailers, and a method of making it.  After

a 12-day trial ending February 13, 2007, a jury returned a verdict for Defendants and against

Checkpoint.  Specifically, the jury found for Defendants on Checkpoint's claim of infringement

of the '555 patent and on Defendants' counterclaim seeking a declaration of non-infringement. The jury also found the '555 patent to be invalid and unenforceable.

In an Order dated February 9, 2009, this Court found the case to be "exceptional" under Section 285 of the Patent Act and ordered an award of attorneys' fees to Defendants.  Doc. 303. In doing so, the Court applied the *Brooks Furniture* standard then in effect.  *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381-82 (Fed. Cir. 2005).  In a subsequent Order and Opinion dated November 2, 2011, the Court awarded $2,432,572.77 and $4,151,147.21 in attorneys' fees and costs to All-Tag and Sensormatic, respectively.  Docs. 313, 314; *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, Civ. Action No. 01-CV-2223, 2011 WL 5237573, at *6 (E.D. Pa. Nov. 2, 2011) [hereinafter *Fee Decision*].

Checkpoint appealed the attorneys' fees award to the Federal Circuit.  While the appeal was pending, Defendant All-Tag Security S.A., owner of co-Defendant All-Tag Security Americas, Inc., entered into bankruptcy and assigned its rights to any award of attorneys' fees to Kobe Properties SARL ("Kobe").  The Federal Circuit added Kobe as a defendant.  Then, on March 25, 2013, the Federal Circuit reversed this Court's ruling and denied attorneys' fees.  The appellate court held that Defendants did not establish by "clear and convincing evidence" that Checkpoint's claim was made in bad faith and objectively baseless, thus failing to satisfy the *Brooks Furniture* standard.  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 711 F.3d 1341, 1348 (Fed. Cir. 2013) [hereinafter *Fed. Cir. Op. I*].

Defendants then petitioned the Supreme Court of the United States for a writ of certiorari. On April 29, 2014, the Supreme Court issued two related opinions on the standard by which to determine whether a case is "exceptional" under Section 285.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014); *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,

134 S. Ct. 1744 (2014).  On May 5, 2014, the Supreme Court granted certiorari in this matter, vacated judgment of the Federal Circuit, and remanded for consideration under *Octane Fitness* and *Highmark*.  *Kobe Props. SARL v. Checkpoint Sys., Inc.*, 134 S. Ct. 2134 (2014).  On remand, the Federal Circuit discussed the new standard, vacated judgment of this Court, and remanded to determine whether the case is exceptional on application of the totality of the circumstances standard established by the Supreme Court.  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 572 F. App'x 988, 989 (Fed. Cir. 2014) [hereinafter *Fed. Cir. Op. II*].

The parties have since filed supplemental briefing on Defendants' renewed motions for exceptional case findings and for attorney's fees.  The Court held oral arguments on the matter on July 14, 2015.

## II.   STANDARD FOR EXCEPTIONAL CASE FINDINGS

Section 285 of the Patent Act states, in its entirety: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  In *Brooks Furniture Manufacturing, Inc.*, the Federal Circuit held that a case is "exceptional" under Section 285 when either (1) there has been some material inappropriate conduct, or (2) the litigation was brought in subjective bad faith and was objectively baseless.  393 F.3d at 1381.  *Brooks Furniture* also held that assertions of infringement of a duly granted patent were presumed to be made in good faith so proof of an "exceptional" case must be made by clear and convincing evidence.  393 F.3d at 1382.

In *Octane Fitness, LLC*, the Supreme Court invalidated the "unduly rigid" *Brooks Furniture* standard as inconsistent with the statutory text.  134 S. Ct. at 1755.  An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated." *Id.* at 1756.  District courts are to

determine whether a case is "exceptional" on a case-by-case basis upon consideration of the

totality of the circumstances.  *Id.*  Nonexclusive factors for district courts to consider include

"frivolousness, motivation, objective unreasonableness (both in the factual and legal components

of the case) and the need in particular circumstances to advance considerations of compensation

and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19

(1994)).  The Supreme Court also overruled the *Brooks Furniture* requirement that litigants

demonstrate their entitlement to attorneys' fees by clear and convincing evidence.  *Id.* at 1758.

Rather, Section 285, like other aspects of patent-infringement litigation, is governed by a

preponderance of the evidence standard.  *Id.*

  In *Highmark Inc.*, the Supreme Court held that appellate courts reviewing a district

court's ruling under Section 285 are to apply an abuse-of-discretion standard.  134 S. Ct. at 1748.

Prior to this ruling, the Federal Circuit had been reviewing exceptional case determinations *de*

*novo*.  *Id.* at 1747.

## III. DISCUSSION

  The purpose of Section 285 is to compensate the prevailing party and to deter against

clearly improper patent suits.  *Mathis v. Spears*, 857 F.2d 749, 753-54 (Fed. Cir. 1988).  The

parties do not dispute that Defendants are the "prevailing parties" for purposes of a Section 285

analysis.  The only issue on remand is whether the case is "exceptional" under the standard

articulated by the Supreme Court in *Octane Fitness*.

  Defendants identify six reasons why this case is exceptional: (1) Checkpoint's purpose

for bringing and prosecuting this case was not to protect its patent rights, but to bankrupt and

eliminate All-Tag, (2) Checkpoint knew the '555 patent was inoperable and maintained it only as

a "nuisance patent," (3) Checkpoint failed to conduct an adequate pre-suit investigation, (4) Checkpoint failed to have its expert test the actual accused product despite having it for more than four years before trial, (5) Checkpoint failed to take discovery on or present evidence relating to disputed issues, including the reasons why the '555 patent was invalid, and (6) Checkpoint continued to prolong these proceedings by misrepresenting the record on appeal.

Checkpoint contends that its infringement claim and pre-suit investigation were reasonable, it had a good faith belief that the '555 patent worked, and it litigated this case in good faith.  In showing reasonableness, Checkpoint relies on the Federal Circuit decision, later vacated by the Supreme Court, which held that physical inspection of the labels is not required to substantiate an infringement claim.  *Fed. Cir. Op. I*, 711 F.3d at 1347-48.  Further, Checkpoint argues that finding this case exceptional would be contrary to this Court's prior rulings, particularly this Court's rejection of Defendants' summary judgment, *Daubert*, and Fed. R. Civ. P. 50 motions.

The Court finds that, on the totality of the circumstances, this is an exceptional case under Section 285.  This case "stands out from others" in that Checkpoint brought suit in bad faith with the improper motive of crippling Defendants' business.  *Octane Fitness LLC*, 134 S. Ct. at 1756.  At the time of Defendants' initial motion, Checkpoint was an $834 million company listed on the NYSE and its only major competitor in the United States was All-Tag, a $15 million company.  *Fee Decision*, 2011 WL 5237573, at *1 n.1.  Before commencing the present suit, Checkpoint had already acquired at least three other competitors, two against whom Checkpoint had previously filed suit.  Trial Tr. 20-24, Feb. 1, 2007.  Checkpoint obtained the '555 patent from one of these competitor acquisitions, Actron, but neither company ever manufactured a product under the '555 patent.  Checkpoint's former Senior Vice President and Actron's former

president, Lukas Geiges, testified that Actron had tried unsuccessfully to make a label under the '555 patent and he had advised Checkpoint about this.[1] Trial Tr. 122, Feb. 6, 2007 (Geiges Video Deposition 8-10, 15 ).  In 1997, in an effort to purchase All-Tag, Checkpoint accused All-Tag of infringing on a number of patents, including the '555 patent.  Checkpoint's then Vice President and General Counsel, Neil Austin, threatened that All-Tag would "bleed with legal fees" unless All-Tag capitulated.  Trial Tr. 83, Feb. 1, 2007.  Austin also warned, "I'm going to put you in bankruptcy and you will cry."  Trial Tr. 49, Feb. 2, 2007.  The Court finds that this evidence compellingly demonstrates how Checkpoint's motive in bringing suit was not to assert its patent rights, but to interfere improperly with Defendants' business and to protect its own competitive advantage.[2] *See, e.g., Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, Civil No. 09-319, 2015 WL 4041684, at *8 (D. Minn. July 1, 2015) (finding improper motivation reflected in e-mails stating, "We are suing Octane.  Not only are we coming out with a great product to go after them, but throwing a lawsuit on top of that," and "Funny thing is—this patent is over 10 years old! . . . Old patent we had for a long time that was sitting on the shelf"); *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharm.*, Civil Action No. 10-6908, 2015 WL 1422337, at *3 (E.D. Pa. Mar. 30, 2015) (concluding case was exceptional when plaintiff's conduct was "beyond common decency" and "motivated by ego and greed").

On the issue of whether Checkpoint conducted an adequate pre-suit investigation, this Court concludes that Checkpoint's investigation was inadequate.  A party must "interpret the asserted patent claims and compare the accused device with those claims before filing a claim

---

[1] Checkpoint attacks Mr. Geiges's testimony as biased because Mr. Geiges left Checkpoint's employ on unfavorable terms.  On the matter of whether Checkpoint knew the '555 patent to be inoperative, however, the Court finds Mr. Geiges's testimony credible.

[2] Curiously, Checkpoint argues that its "motivation and reasons for filing suit are irrelevant."  *See* Pl.'s Supplemental Brief 14.  The Supreme Court, however, explicitly listed "motivation" as one of several factors for district courts to consider under Section 285.  *Octane Fitness, LLC*, 134 S. Ct. at 1756 n.6.

alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens, Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).[3]  Prior to filing suit, Checkpoint had received two "formal, oral discussion opinion[s]," one from Swiss counsel and another from U.S. patent counsel.  Neil Austin Dep. 115:13-118:24, July 17, 2003, Doc. 307-1.  The opinions were premised on European litigation between Checkpoint and All-Tag Security S.A.'s predecessor in which Checkpoint prevailed on its claim of infringement of "the Swiss counterpart to the '555 patent."  *Id.*; Pl.'s Supplemental Brief 25, Doc. 346.  But the European litigation involved different patents, different parties, and the application of foreign law.  The opinions upon which Checkpoint bases this suit were given years before filing here and it is unclear what product, made by which company, was the subject of these opinions.  Austin Dep. 115:10-11.  Checkpoint's Senior Research Engineer, Gary Mazoki, also testified that Checkpoint never evaluated the actual accused product prior to filing suit here.  Trial Tr. 55, Feb. 9, 2007.[4]  The Court therefore concludes that Checkpoint failed to conduct an adequate pre-suit investigation.  *See Bayer CropScience AG v. Dow AgroSciences LLC*, Civ. No. 12-256, 2015 WL 108415, at *6-7 (D. Del. Jan. 5, 2015) (finding the exceptional nature of the case to be compounded by patentee's lack of due diligence, which only amounted to two telephone calls, no written analysis, and no involvement of outside counsel), *adopted by*, *Bayer CropScience AG v. Dow Agrosciences LLC*, Civ. No. 12-256, 2015 WL 1197436 (D. Del.

---

[3] Though *Q-Pharma, Inc.* discussed pre-suit requirements in the context of Fed. R. Civ. P. 11, its requirements are relevant here.  Under *Brooks Furniture*, a case was only exceptional if a losing party engaged in independently sanctionable misconduct or its claims were brought in subjective bad faith and objectively baseless. 393 F.3d at 1381.  Under *Octane Fitness*, the inquiry is now more holistic, encompassing, but not requiring, conduct that violates Rule 11.  134 S. Ct. at 1756.

[4] Mr. Mazoki's testimony:
Q:  [H]ave you ever heard from anyone at Checkpoint an opinion that the All-Tag infringes the '555 patent?
A:  I have heard no opinion …
Q:  Has anybody at Checkpoint, to your knowledge – and by anybody I mean employees of Checkpoint – to your knowledge done any analysis to determine whether the All-Tag tag has a hole in the dielectric layer between the two capacity plates?
A:  I don't recall, no.
Trial Tr. 39, 55, Feb. 9, 2007.

Mar. 13, 2015); *Yufa v. TSI Inc.*, No. 09-CV-01315, 2014 WL 4071902, at *3 (N.D. Cal. Aug.

14, 2014) (finding case exceptional in part because the plaintiff filed suit "without purchasing or

testing any of TSI's accused products to determine if they infringed"). *Cf. Epcon Gas Sys., Inc.*

*v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002) (affirming, under the *Brooks*

*Furniture* standard, that case was unexceptional when the defendant's only ground for

exceptionality was an inadequate pre-suit investigation and patentee's "failure to obtain a

favorable infringement opinion prior to filing suit is of diminished significance" when evidence

of infringement defeated summary judgment).

    The fact that Checkpoint's sole infringement expert, Dr. Markus Zahn, did not test an

actual accused product for infringement of the '555 patent also weighs in favor of this case's

exceptionality. The Court has already opined on this point in its prior award of attorneys' fees,

but will clarify in light of the Federal Circuit's guidance. *See Fee Decision*, 2011 WL 5237573,

at *1 n.1. "[T]ests or experiments on the actual accused products are not always necessary to

prove infringement. In some instances, circumstantial evidence alone may suffice." *Fed. Cir.*

*Op. II*, 572 F. App'x at 989 (citing *Fed. Cir. Op. I*, 711 F.3d at 1346-48). In concluding

infringement, Dr. Zahn only inspected labels made by All-Tag Security A.G. of Switzerland, not

the actual accused product manufactured by Defendant All-Tag Security S.A., which had been

available years before trial.[5] Trial Tr. 77, Feb. 2, 2007. Dr. Zahn also compared the '555 patent

with All-Tag's patents, U.S. Patent Nos. 5,187,466 ("the '466 patent") and 7,023,343 ("the '343

patent"). Checkpoint argues that it reasonably relied on All-Tag's representation that the

---

[5] The parties continue to dispute whether samples of the accused product were provided by All-Tag to Checkpoint. All-Tag claims to have sent the samples on November 22, 2002, more than four years before trial, but Checkpoint denies receipt of them. The Court finds Checkpoint's assertion to be dubious since Sensormatic, to whom All-Tag also sent samples at the same time, confirmed receipt. Sensormatic Mot. for Atty Fees, Ex. A, Doc. 279-1.

accused products were made "generally" in accordance with the '466 and '343 patents, which is circumstantial evidence sufficient to excuse it from examining the actual accused products. The Court disagrees. There was evidence that All-Tag's manufacturing processes were not the same as those disclosed in the '466 and '343 patents, making mere comparison of the patents, instead of the actual product, insufficient.[6]   These findings are consistent with the jury's verdict for the defense. In sum, Checkpoint's failure to examine the actual accused product was unreasonable.[7] *See Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) ("[W]e agree with the district court that Kim did not prove infringement because she presented no testimony based on the accused products themselves that supported a finding of infringement."). *But see*, *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1373-74 (Fed. Cir. 2009) ("Contrary to [the defendant's] reading of *Kim*, we did not articulate a general rule requiring one who alleges infringement of a claim containing functional limitations to perform actual tests or experiments on the accused product or method.").

The fact that this Court previously denied Defendants' *Daubert* motion, motion for directed verdict, and motion for judgment as a matter of law ("JMOL") does not preclude a

---

[6] For example, Defendants' expert, Dr. Christopher Rose, testified about how differences between the manufacturing process and the process described in the '343 patent resulted in a different product than that described in the patent:

> Q:     Does the '343 patent accurately describe All-Tag's process to make [P]roduct 2?
> A:     No. There are variables . . . The shape of the tips, so that's how much pressure you actually end up applying, the weight of the tip, the weight of the probe pushing thing down. The temperature. The amount of the time that you spend pressing.
> Q:     So, is it your testimony that will make a difference as to the ultimate product that is made by this process?
> A:     Yes.
> Q:     What difference would it make. [sic]  Can you give me an example?
> A:     The amount of how much you damage the dielectric depends on how hot the probe is, how hard you press, how long you dwell. How much energy you transfer into it. The weight determine – the pressure determines the contour of the dent that you make. We can go on and on . . .

Trial Tr. 140-141, Feb. 7, 2007.

[7] The Court agrees with the Federal Circuit that Dr. Zahn's failure to inspect the actual accused product does not, by itself, render this case objectively baseless or brought in bad faith. *See Fed. Cir. Op. I*, 711 F.3d at 1348. Rather, this Court rests its finding of bad faith on the totality of the circumstances, including evidence of Checkpoint's improper motivation for bringing suit.

finding that this case is exceptional.  Checkpoint cites to *Medtronic Navigation, Inc. v. BrainLAB*, 603 F.3d 943 (Fed. Cir. 2010), where, in Checkpoint's words, "the Federal Circuit reversed, ruling that the § 285 finding 'undermined' the district court's prior favorable rulings." Pl.'s Supplemental Brief 6.  Checkpoint's characterization is not exact; rather, the Federal Circuit found that the district court's denial of the defendant's motions for summary judgment and JMOL undermined the court's later finding that the plaintiff's claims were frivolous.  *Medtronic Navigation, Inc.*, 603 F.3d at 954.  Here, the Court does not find that Checkpoint's claims were frivolous.  Frivolousness is not required to find exceptionality under Section 285.  *See Octane Fitness, LLC*, 134 S. Ct. at 1756 n.6 (listing "frivolousness" as only one of several "nonexclusive . . . factors" to be considered in the totality of the circumstances).  Certainly, Checkpoint may rely on this Court's denial of Defendants' *Daubert* and JMOL motions to indicate the reasonableness of its claims, but doing so is not dispositive.  *See, e.g., Alzheimer's Inst. of Am., Inc.*, 2015 WL 1422337, at *3 (finding a case exceptional after denial of cross-motions for summary judgment and trial); *Bianco v. Globus Medical, Inc.*, Case No. 2:12-CV-00147, 2014 WL 1904228, at *2 (E.D. Tex. May 12, 2014) (explaining how denial of summary judgment on the issue of inventorship indicates non-frivolousness, but is not dispositive).

Having concluded that, on the totality of the circumstances, this case is exceptional, this Court further finds that an award of attorney fees to Defendants is warranted.  The district court has discretion whether or not to award fees, even in exceptional cases.  *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990).  Factors for the court to consider include "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser."  *Id.* (quoting *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)).

As explained above, Checkpoint brought this action, not to protect its patent rights, but to harm Defendants' business.  Deterrence of such conduct is an important factor in determining an award of attorneys' fees.  *Octane Fitness, LLC*, 134 S. Ct. at 1756 n.6.  Checkpoint also litigated in an unreasonable manner, failing to conduct an adequate pre-suit investigation and failing to base its infringement analysis on sufficient comparison between the '555 patent and the accused products.  The Court concludes, in an exercise of its discretion, that an attorneys' fee award is appropriate.

As to the size of the attorneys' fee award, this Court partially addresses the issue and reserves ruling on the final amount.  This Court, after its first exceptional case finding, rendered an attorneys' fee and reasonable cost award of $2,432,572.77 to All-Tag and $4,151,147.21 to Sensormatic.  *Fee Decision*, 2011 WL 5237573, at *6.  The Court arrived at its conclusion on the basis of the same facts relied upon here and had considered Checkpoint's objections to Defendants' Bills of Attorneys' Fees and Costs.  *Id.* at *1.  The Court will therefore reinstate the original award as rendered in the Order and Opinion dated November 2, 2011.  Docs. 313, 314.  The Court also awards post-judgment interest from the date of this decision in accordance with 28 U.S.C. § 1961.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 745 F.3d 513, 518 (Fed. Cir. 2014) ("[W]here a previous judgment is vacated, any post-judgment interest must be determined based on the more recent judgment.")

The Court further awards reasonable attorneys' fees and costs incurred since November 2, 2011, but reserves on the amount.  *See Therasense, Inc.*, 745 F.3d at 517 ("Indeed, § 285 does not bar the trial court from awarding fees for the entire case, including any subsequent appeals.").  Defendants argue that Checkpoint continued to litigate in bad faith by misrepresenting the trial record on appeal before the Federal Circuit.  The Court, however, does

11

not find sufficient evidence to reach this conclusion.  The appeal was not itself exceptional under Section 285, but this does not preclude an award of attorneys' fees.  *See id.* at 516 (affirming denial of appellate attorney fees, but declaring that "a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285"); *id.* at 519 (Dyk, J., dissenting) (discussing Supreme Court precedent holding that "all phases of litigation, including appellate proceedings, are to be treated as a unitary whole, not parsed into discrete parts").  Here, the Court exercises its equitable discretion in awarding appellate fees in order to compensate Defendants for defending a lawsuit brought in bad faith and to deter litigants from engaging in unreasonable conduct.

**IV.      CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' renewed motions for exceptional case findings and attorneys' fees.  It reserves on the amount of the award, pending submission by the parties.  An appropriate order follows.