UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHECKPOINT SYSTEMS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 01-CV-2223 |
| | : | |
| | : | |
| ALL-TAG SECURITY S.A., et al. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT SENSORMATIC'S REPLY IN FURTHER SUPPORT OF DEFENDANTS'**
***SUPPLEMENTAL* BILLS OF ATTORNEY'S FEES AND EXPENSES**

**I.      INTRODUCTION**

This Court determined that this case is "exceptional" pursuant to 35 U.S.C. § 285 and awarded Defendants <u>all</u> attorney's fees and costs by reinstating its prior award of <u>all</u> Defendants' fees <u>and</u> prejudgment interest.  It then ordered Defendants to submit supplemental Bills detailing their fees and expenses that were not awarded in the Court's November 2, 2011 Order.  At this stage, all that remains for this Court to determine is the reasonableness of Defendants' supplemental fees and expenses by evaluating (a) the number of hours worked, (b) the rates charged for the work, (c) whether the work was related to the patent litigation, and (d) the adequacy of Defendants' documentation.

Most of Checkpoint's Objections are an improper and untimely motion for reconsideration.  Checkpoint challenges Defendants' redacted time entries as lacking adequate documentation, certain time entries as appearing to relate to other cases, and time entries for reply briefs not accepted by the Court as unrelated.  In the interest of not further burdening the Court and prolonging proceedings, Sensormatic voluntarily withdraws its claim to $55,000 in

fees, the approximate amount of these billing entries.   Checkpoint goes on to improperly challenge amounts Defendants spent on indemnity issues and discovery of All-Tag, S.A.'s bankruptcy as unrelated to this patent litigation.

## II.   THE COURT HAS ALREADY AWARDED DEFENDANTS ALL ATTORNEY'S FEES AND EXPENSES THEY INCURRED IN THIS EXCEPTIONAL CASE FROM 2009 THROUGH THE PRESENT.

The *Octane Fitness* process requires Three Steps: (1) determine whether the case is "exceptional;" (2) determine whether an award of any, some or all attorney's fees is appropriate; and (3) if an award of any fees is appropriate, determine the "amount" of the fees. *See, e.g.*, *Johnson & Johnson Assocs. v. R.E. Serv. Co.*, No. C 97-04382, 1998 U.S. Dist. LEXIS 20235, at *28 (N.D. Cal. Dec. 29, 1998) (citing Federal Circuit precedent).   The Court's August 18, 2015 Memorandum and Order conducted the first two steps clearly and conclusively, finding the case "exceptional" and awarding Defendants all of their attorney's fees.

Step #1 – The Court found "that, on the totality of the circumstances, this is an exceptional case under Section 285."  (Doc. 351, at 5).  In making this determination, the Court held that Checkpoint brought this suit in bad faith with an improper motive (Doc. 351, at 5-6), did not conduct an adequate pre-suit investigation (Doc. 351, at 6-8), and litigated the case in an unreasonable manner (Doc. 351, at 8-9).

Step #2 – The Court found "that an award of attorney fees to Defendants is warranted," reinstated its original award, which included all of Defendants fees through February 2009 plus prejudgment interest,[1] and also "award[ed] reasonable attorneys' fees and costs incurred" since its prior award.  (Doc. 351, at 10-11).

---

[1] Checkpoint's Objections dispute Defendants' prejudgment interest rate and method of compounding. But, (1) 6% was the Pennsylvania Statutory Rate when Checkpoint chose to file its lawsuit in the Eastern District of Pennsylvania, (2) Checkpoint did not object to the use of a 6% prejudgment interest rate compounded monthly in its
(continued...)

### III.   CHECKPOINT'S OPPOSITION IS AN UNTIMELY MOTION FOR RECONSIDERATION.

Despite the clarity of the Court's Memorandum and Order, Checkpoint devotes a substantial portion of its Objections to improperly attempting to reargue Step #1, the issue of whether the case is exceptional and Step #2, to what extent an award of attorney's fees is appropriate.  This is exactly the same improper tactic Checkpoint employed when it responded to Defendants' original Bills of Attorney Fees, a tactic this Court previously and flatly rejected. (Doc. 313, at 6) ("Plaintiff's first objection, that the conduct supporting the finding of an 'exceptional case' under 35 U.S.C. § 285 cannot justify more than a 'nominal award' of attorneys' fees, is a thinly veiled and untimely attempt to have this Court reconsider the 'exceptional case' finding already rendered.").

In addition, just as it failed to do six years ago, Checkpoint failed to move for reconsideration of the Court's August 18, 2015 Memorandum and Order, and its time for doing so has now passed.  L.R. 7.1(g) ("Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned . . . .").

In regard to Step #3, this Court previously observed, "[t]he purpose of allowing Plaintiff to file objections to the bills of attorneys' fees and expenses is to permit Plaintiff to contest the reasonableness of the fees," such as on the basis that certain hours were "excessive,

_____

(continued...)

objections to Defendants' original fee petitions, (3) the Court adopted this interest rate and compounding method in its original award of attorney's fees, (4) Checkpoint did not appeal the adoption of this rate and method of compounding, (5) the Court again adopted this rate and compounding method when it reinstated its original award, (6) the Court granted Defendants' renewed motions for attorney's fees which used this rate and compounding method, and (7) Defendants cited ample legal support for the application of this rate and compounding method in their Supplemental Bills of Attorney's Fees.  Should the Court decide to consider Checkpoint's argument with respect to the prejudgment interest rate or compounding method, Defendants' respectfully request leave to supplement this Reply in writing and/or Oral Argument.

redundant, unnecessary or otherwise not reasonably expended." (Doc. 313, at 4-5). The Court made it clear in its Memorandum and Order of August 18, 2015 that the <u>only</u> issue it reserved was the "amount" of Defendants' fees (Doc. 351, at 11-12) and that was the <u>only</u> issue Plaintiff was permitted to object to. Thus, Checkpoint's Objections which concern Step #1 and Step #2 are improper and beyond the scope of what was permitted by Court Order. The reasonableness of Defendants' fees is therefore the <u>only</u> issue that remains for determination by the Court and, as such, Defendants will not address the improper and untimely arguments in Checkpoint's Objections.[2]

## IV.   DEFENDANTS' FEES ARE REASONABLE, BUT SENSORMATIC WILL VOLUNTARILY WITHDRAW ITS CLAIM TO $55,000.

The Court "award[ed] reasonable attorneys' fees and costs incurred since November 2, 2011, but reserve[d] the amount." (Doc. 351, at 11); *see also* (Doc. 351, at 12) (granting "Defendants' renewed motions for exceptional case findings and attorney's fees" and only "reserve[ing] on the amount of the award"). Therefore, the only issue remaining is Step #3 – determining whether Defendants' fees are reasonable. Determining what constitutes "reasonable" fees requires evaluating (a) the number of hours worked, (b) the rates charged, (c) whether the work was related to the patent litigation, and (d) the adequacy of Defendants' documentation. *See, e.g., Kilopass Tech, Inc. v. Sidense Corp.*, No. 10-cv-02066, 2015 U.S. Dist. LEXIS 30650, at *17, 22, 29 (N.D. Cal. Mar. 11, 2015).

Checkpoint does <u>not</u> challenge (a) the hours worked nor (b) the rates charged. Checkpoint <u>only</u> asserts <u>one</u> objection based upon adequacy of documentation and <u>four</u>

---

[2] Should the Court decide to <u>reconsider</u> its prior Memorandum and Order <u>or</u> consider the Objections <u>re</u>-asserted by Checkpoint in Section I of its submission, Defendants respectfully request leave to supplement this Reply in writing and/or by Oral Argument.

objections based upon "relatedness" to the patent litigation which, taken together, account for only approximately $100,000 of the total requested. Checkpoint specifically objects to Defendants' requests for: (#1) fees relating to a potential indemnification claim; (#2) fees relating to All-Tag's bankruptcy; (#3) fees that appear unrelated to this matter; (#4) fees based upon entries that were redacted for privilege; and (#5) fees incurred preparing reply briefs which were not ultimately accepted by the Court. Checkpoint's Objections, at 15.

### A.   Sensormatic Voluntarily Withdraws Its Claim to $55,000 in Fees.

Checkpoint objects to approximately $37,000 in fees that appear to be unrelated to this case (Checkpoint Objection #3 – $3,976.08), were redacted for privilege (Checkpoint Objection #4 – $4,127.50), or were incurred preparing reply briefs which were filed but not accepted by the Court (Checkpoint Objection #5 – $28,499.88). Checkpoint's Objections, at 15. Determining these objections would require the Court to spend time evaluating individual billing entries and potentially examining the redacted entries *in camera*. In order not to further burden the Court and consistent with the "equitable discretion" exercised by the Court in reaching its August 18, 2015 decision, Sensormatic reduces its claim for attorney's fees by $55,000, an amount that is more than sufficient to include the $36,603.46 challenged by Checkpoint as well as any prejudgment interest sought on such amounts.[3] A revised proposed Order pertaining to Sensormatic, identical to Sensormatic's previously filed proposed Order except reflecting this voluntary deduction, is attached as Exhibit "1."

---

[3] *Cf. Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No. 8:12-cv-00329, Doc. 549, at *3-4 (C.D. Cal. Sept. 4, 2015) ("Trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.") (quoting *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011)). A copy of the unpublished order in *Universal Electronics* is attached hereto as Exhibit "2."

#35736739 v7

**B.      Checkpoint's Bad Faith Litigation Tactics Forced Defendants to Spend Fees on an Indemnity Claim <u>and</u> Discovery Relating to All-Tag's Bankruptcy.**

Checkpoint argues that Defendants' fees relating to a potential indemnity claim (Checkpoint Objection #1 – $42,942.44) and All-Tag, S.A.'s bankruptcy (Checkpoint Objection #2 – $22,354.84) are not "related" to the patent-litigation.  This is <u>not</u> correct.  To the contrary, Checkpoint chose to include Sensormatic, All-Tag's largest customer, as a defendant as part of its nefarious plan to cause harm to its competitor, All-Tag, by disrupting the relationship between All-Tag and its largest customer, Sensormatic.  *See, e.g., Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, No. , 2015 U.S. Dist. LEXIS 85571, at *16-18 (D. Minn. July 1, 2015) (addition of "distributor and not a manufacturer" was part of bad faith litigation tactics).  Sensormatic had no role in manufacturing the tags at issue in the lawsuit and was not a necessary party, yet it was joined and forced to spend millions of dollars defending itself against Checkpoint's claims.  Because Sensormatic was not the manufacturer of the tags at issue in the lawsuit, it evaluated and pursued potential indemnification claims against All-Tag.   None of that work and the corresponding attorney's fees would have been incurred in Checkpoint had not filed and pursued this baseless lawsuit.

Checkpoint's argument is particularly disingenuous with respect to what it claims are "fees relating to All-Tag's bankruptcy in Belgium and assignment of claims to Kobe."  The Federal Circuit added Kobe as a defendant to this litigation after All-Tag Security S.A. entered into bankruptcy (caused by Checkpoint) and assigned its rights to any award of attorney's fees to Kobe.  Checkpoint, however, not content to litigate the attorney's fee issues left in the litigation but determined to continue inflicting additional costs on Defendants, sought irrelevant discovery regarding All-Tag Security S.A.'s bankruptcy after the case was remanded back to this Court.

The attorney's fees Checkpoint complains about, such as seeking declarations from the European bankruptcy trustee, are fees incurred in responding to Checkpoint's own discovery requests.

Every dollar expended by Defendants on these issues was the result of Checkpoint's litigation tactics, motivated by Checkpoint's desire to harm All-Tag as a competitor, and is therefore recoverable.  *See Kilopass*, 2015 U.S. Dist. LEXIS 30650, at *22 (defendant entitled to all attorney's fees and costs arising from litigation because defendant would not have incurred any patent-related litigation expenses "but for" plaintiff's misconduct).

## V.    CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Supplemental Bills of Attorney's Fees, Sensormatic is entitled to recover, and Checkpoint should be ordered to pay Sensormatic, a total of $6,982,017.10 in fees and Prejudgment Interest as well as Post-Judgment Interest from the date of the Court's Order or Judgment awarding Defendants their fees.

Respectfully submitted,

/s/M. Kelly Tillery
M. Kelly Tillery
Erik N. Videlock
Charles S. Marion
PEPPER HAMILTON LLP
3000 Two Logan Place
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103
(215) 981-4000
Fax: (215) 981-4750

Attorneys for Defendant Sensormatic
Electronics Corporation

Dated:  October 2, 2015

#35736739 v7

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHECKPOINT SYSTEMS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO.  01-cv-2223 |
| | : | |
| ALL-TAG SECURITY S.A., et al. | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

And now this _____ day of _____, 2015, in accordance with this Court's August 18, 2015 Memorandum and Order, and upon consideration of Defendant Sensormatic Electronics Corporation's ("Sensormatic") Supplemental Bill of Attorney's Fees and Expenses, the Affidavits, and the documentation submitted in support of such Bill, as well as Plaintiff Checkpoint Systems, Inc.'s Objections thereto, it is hereby ORDERED that Plaintiff Checkpoint Systems, Inc. shall pay Sensormatic all of its attorney's fees, expenses, prejudgment interest and post-judgment interest incurred in the above-captioned case, including any appellate proceedings.

More specifically, it is ORDERED that, in addition to the $4,151,147.21 previously awarded to Sensormatic which was reinstated by the Court's August 18, 2015 Order, and the additional prejudgment interest that has accrued on that prior award, which totals $1,981,110.54, Plaintiff Checkpoint Systems, Inc. shall reimburse Sensormatic for its attorney's fees, expenses, and prejudgment interest incurred in this case since February 2009, including in the appellate proceedings in this matter, in the following amounts:

| | |
|---|---|
| Reinstated Original Award | $4,151,147.21 |
| Post-Original Award Attorney's Fees | $736,363.62 |
| Post-Original Award Expenses | $11,293.57 |
| Total Prejudgment Interest on Original and Supplemental Awards | $2,138,212.70 |
| Disputed Billing Entries Voluntarily Withdrawn | -$55,000 |
| Total: | $6,982,017.10 |

Not included in this total is the post-judgment rate of $74.60 per day which is accruing.

**IT IS SO ORDERED.**

BY THE COURT:

_____

Honorable Petrese B. Tucker, Chief Judge

# EXHIBIT 2

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| UNIVERSAL ELECTRONICS, INC. ) | CASE NO. SACV 12-00329 AG (JPRx) |
| ) | |
| Plaintiff, ) | ORDER SETTING AWARD OF FEES |
| ) | AND EXPENSES, INCLUDING |
| v. ) | TAXABLE COSTS TO DEFENDANT |
| ) | |
| UNIVERSAL REMOTE CONTROL, ) | |
| INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

The Court has held that Defendant Universal Remote Control, Inc. ("Defendant" or "URC") is entitled to attorney fees under 35 U.S.C. section 285, as recently interpreted by the Supreme Court in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). In *Octane*, the Supreme Court eased the requirements to get such fees under section 285. Now the Court must calculate the amount of fees to be awarded. The Court's Order also now calculates appropriate expenses, including whether expert fees are recoverable here. Very voluminous documentation, including supplementation and objections, have been submitted by Defendant and Plaintiff Universal Electronics, Inc. ("Plaintiff" or "UEI").

The calculations and the issues thus presented underscore uncertainty about how to determine attorney fees under section 285. The Court begins with a global fee analysis that it concludes properly balances all interests, and then it engages in a more granular analysis that likely consumes time and resources unnecessarily.

## GLOBAL FEE ANALYSIS

Some have become concerned about wasted effort focused on the recovery of fees under section 285. The calculation of actual fees awarded are a significant part of the time and energy dedicated to section 285 motions.

Authorities vary on how to establish attorney fees in the different areas where fees are recoverable. These include fees under a contract clause, *see, e.g.*, *Becker v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 178462 at *20 (E.D. Cal. Dec. 29, 2014) ("The starting point for determining reasonable attorneys' fees under Section 1717 is the 'lodestar.'"); the recovery of fees in some class action settlements under a common fund theory, *see, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 967-68 (9th Cir. 2003) ("As in a statutory fee-shifting case, a district court in a common fund case can apply the lodestar method to determine the amount of attorneys' fees. . . . Alternatively, in a common fund case, the district court can determine the amount of attorneys' fees to be drawn from the fund by employing a 'percentage' method."); *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) ("The district court did not err in approving the fee award. Plaintiffs'

class counsel asked for attorneys' fees in the amount of 25% of the overall settlement fund of $27,250,000 and the district court granted class counsels' request."); and the recovery of fees in a case under 28 U.S.C. section 1983, *see, e.g.*, *McCown v. City of Fontana*, 711 F. Supp. 2d 1067, 1072 (C.D. Cal. 2010) (stating that "[o]verall, considering all that it observed in this case, this Court makes an equitable finding that the legal services provided that support recoverable fees should be reasonably valued at $150,000," and then awarding $148,250 under the traditional mathematical lodestar analysis) (Guilford, J.), *aff'd*, 2011 U.S. App. LEXIS 25841 (9th Cir. Dec. 27, 2011). Of course, different factors are involved in the different areas where fees can be recovered, and they raise various issues. A victorious 1983 plaintiff may be enforcing important constitutional principles, while a fee award in a class action common fund situation may be enforcing statutory regulations. One purpose of section 285 is to deter bad faith litigation by imposing the cost of a bad decision on the decision-maker.

There is a growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries and hourly rates. Former Supreme Court Justice Sandra Day O'Connor, sitting by designation, has emphasized the overall equitable nature of fee analysis. She has written that "[t]he net result of fee-setting jurisprudence . . . is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189 (2d Cir. 2007) (O'Connor, J., sitting by designation, joining in the opinion) (citation omitted). Justice Elena Kagan has echoed these sentiments in *Fox v. Vice*.

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these

determinations, in light of "the district court's superior understanding of the litigation."

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

The statements of Justices O'Connor and Kagan reflect what is happening in the legal profession as hourly billing has become increasingly unpopular and clients prefer to look at aggregate, global numbers.

As noted, and reflecting the modern trend described by two Supreme Court Justices, this Court will begin by generally reviewing this case to determine a reasonable aggregate global amount for fees. After all, this Court has dealt with this case and the attorneys involved for a significant time, has an overall sense of the suit, and has the experience to determine a reasonable fee in the context of this litigation.

Defendant requests approximately $4.6 million in fees, having already made an attempt to apportion the requested fees under the Court's Order. And, in response to the Court's concern that this case has been over-litigated, Defendant has omitted certain items from its request. Yet, given the Court's intimate familiarity with this case over its three-year course, the Court is left with the firm impression that the submitted fees, while reflecting adequate work that led to a favorable outcome for Defendant, also reflect the inefficiency of too many lawyers and not enough focus. Too often, the proper goal of a litigator to bring order out of chaos was lost, with more chaos resulting.

So, from a global, overall review, and taking into account the significant apportionment Defendant has already undertaken at the Court's direction, the Court imposes a further discount on the fees sought of around 10%, for a total award of $4.1 million, rounded. In light of all the circumstances and the Court's superior understanding of the litigation, this is the proper amount. It certainly reflects the "rough justice" that Justice Kagan says should be sought. *Fox*, 131 S. Ct. at 2216. While this is a relatively large number for an award that only covers certain patents and issues in the case, it is appropriate given the amount at stake, the complexity of the issues, and the fact that the resolution of certain issues reflected significant difficulties unnecessarily caused by Plaintiff. The

Court has determined, for example, that "this litigation was at least in part motivated by Plaintiff's desire for 'payback' for Defendant's successful competition in the marketplace," that Plaintiff failed to adequately review its own material concerning marking before filing suit, that it engaged in discovery gamesmanship to obscure such failing, and that Plaintiff engaged in "troubling" conduct concerning a petition for correction of inventorship.

Those concerns were addressed in the Court's Order determining that a partial grant of fees would be appropriate here. With the careful apportionment already performed by the Court and Defendant, the global, overall review just recited ought to suffice. Rough justice has been done. But to provide further detail, the Court now turns to a more granular analysis.

**GRANULAR FEE ANALYSIS**

The Court ruled that Defendant was entitled to fees for the portions of the case that were attributable to the '426 and '067 Patents and the motion for reconsideration regarding the '367 Patent. Accordingly, Defendant has apportioned its fees, and seeks reimbursement of only portions of the fees. Plaintiff does not contest that apportionment, but does contest other aspects of the fees, as well as Defendant's expense request.

Defendant requests $4,661,341.55 in attorney fees and $860,911.50 in expenses, totaling $5,522,253.04. That amount excludes $250,949.03 that Defendant omitted to avoid disputes. Plaintiff objects that certain billing rates are too high, that Defendant intentionally handled the case inefficiently, that certain expenses are not awardable under section 285, and that taxable costs were requested both here and in an earlier submission to the Clerk. As calculated, itemized, etc., in the following, the attorney fees awarded shall be $4,144,847.62, and the expenses awarded shall be $478,542.06.

1.      **LEGAL STANDARD**

"35 U.S.C. § 285 permits a district court to award reasonable attorneys' fees in an exceptional case." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). The "purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (emphasis and quotation omitted). "Section 285's requirement that the fees awarded be 'reasonable' is a safeguard against excessive reimbursement." *Id.* at 754.

"The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Id.* (citing *Lam*, 718 F.2d at 1068). The methodology preferred by this Court is the Global Fee Analysis already undertaken. But *Lam*, written in 1983, also stated that "[i]n determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." 718 F.2d at 1068 (internal citations omitted). In this regard, the following has been considered.

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

This framework relates primarily to contingency fee cases, and does not map perfectly on to cases—like this one—where a party has actually paid the fees. Indeed, in the contingency fee

context, the Ninth Circuit has explained that "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Yet whether a client is willing to pay a fee is not determinative of whether courts will compel an adversary to pay them. The statute only allows the award of "reasonable" attorney fees. 35 U.S.C. § 285. Reasonableness "is assessed at the discretion of the district court." *Lam*, 718 F.2d at 1068 (citing *Am. Safety Table Co. v. Schreiber*, 415 F.2d 373, 380 (2d Cir. 1969), *cert. denied*, 396 U.S. 1038 (1970); *Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871, 880 (9th Cir. 1969), *cert. denied*, 396 U.S. 834 (1969)).

Beyond attorney fees, "[t]he award of expenses [is also] properly within the scope of § 285." *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *accord Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (citing *Mathis*, 857 F.2d at 759). But expert fees are only allowable if there is "fraud on the court or abuse of judicial process." *Amsted Ind. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994).

## 2. FEES

Defendant calculated the apportionment of its fees two ways: by patent, and by issue. Defendant calculated $4,650,031.68 in attorney fees using the patent apportionment and $4,672,651.41 using the issue apportionment. Averaging the two, Defendant requests $4,661,341.55 in attorney fees. Defendant argues that these fees are appropriate "lodestar" fees under *Hensley v. Eckerhart* because they represent "the number of hours the prevailing party reasonably expended on the litigation . . . multiplied by a reasonable hourly rate."

Plaintiff argues that Defendant's requested figure is well above "reasonable," as Defendant "spared no expense in its hard-nosed pursuit of victory." Plaintiff requests several deductions from the requested amount, emphasizing the requirement that the "lodestar" figure be the product of "reasonable hours and reasonable rates."

**2.1    Rates**

Plaintiff objects to the rates billed by the partners and the patent agent at Sidley Austin, LLP ("Sidley"). While the Sidley partners at issue normally charge between $750 and $975 per hour, these rates were often discounted. Thus, the actual average rate charged by the Sidley partners was $768.06 per hour. Based on the Court's knowledge of local billing rates, the Sidley partner rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and are thus reasonable. *Blum v. Stevenson*, 465 U.S. 886, 895 (1984).

The reasonableness of the challenged rates is also supported by the billing rate reports submitted by the parties. *See, e.g.*, *Mathis*, 857 F.2d at 755-56 (relying on billing survey data). The Valeo Hourly Rates Database for Los Angeles and Orange county shows that intellectual property partners at major law firms bill in the range of approximately $600 to $1,100 per hour. In the National Law Journal report of the "Priciest Law Firms," average partner rates range from $715 to $1,055 per hour. The challenged rates are on the lower side of that "pricey" range, and Defendant, in its business judgment, apparently believed that the case was important and complex enough to warrant those rates. In the American Intellectual Property Law Association ("AIPLA") survey, the average billing rate of full-time partners in private firms with over 150 attorneys was $690 per hour, and $800 per hour in the third quartile.

All the surveys cited are relevant. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965-66 (N.D. Cal. 2014) (finding $1,095 a "reasonable rate" using the Valeo database). In sum, the rates charged by the Sidley partners were in line with those charged at similar firms.

Plaintiff also challenges the rates billed by Sidley patent agent Ferenc Pazmandi, which increased over the course of the case from $575 per hour to $720 per hour. After discounts, his average rate here was $693.91 per hour. The AIPLA survey shows a third quartile rate of $266 per hour for patent agents at large firms, significantly lower than Pazmandi's rate. No survey evidence has been provided supporting a rate near $693.91 per hour for a patent agent. Defendant argues that the AIPLA survey "includes only three respondents from the 'Other West' region," and that

1    "from a technical standpoint, Dr. Pazmandi's patent litigation work experience exceeds that of most

2    mid-level associates."  Defendant cites no authority supporting rates for patent agents similar to

3    Pazmandi's rate.

4           Thus, the Court will award fees for Pazmandi's work at the rate of $323 per hour, the highest

5    rate for a patent agent in the AIPLA survey, resulting in a reduction of $92,537.01 (after

6    apportionment).

7

8        **2.2    Hours**

9

10          Defendant seeks fees for the work of four law firms in this case.  Defendant first retained

11   Ostrolenk Faber, LLP ("Ostrolenk") as lead counsel, with Christie, Parker, & Hale, LLP ("CPH")

12   serving as local counsel.  The local counsel laterally moved with Mr. Brookey from CPH to Tucker

13   Ellis, LLP ("Tucker").  Defendant added Sidley to the case before the summary judgment phase.

14   Plaintiff requests a blanket 30% reduction in hours billed due to the resulting inefficiencies, noting

15   that the Court has acknowledged that this case was "overlitigated," and the calculation of

16   "reasonable attorneys' fees" should reflect this fact.  Defendant responds that retaining multiple law

17   firms is common in complex litigation, as is having multiple attorneys attend major depositions, and

18   that the practice can even "enhance[ ] efficiency."  (Quoting *Howes v. Med. Components, Inc.*, 761 F.

19   Supp. 1193, 1199 (E.D. Pa. 1990).)

20          The number of firms and lawyers working on this case was excessive and inefficient.

21   Plaintiff points out that 56 people billed time to Defendant's case, and that multiple attorneys

22   routinely attended depositions and hearings.  Concerning staffing excesses, the Court previously

23   noted to those in the courtroom, "I must say to the defense, six lawyers, I assume some of them

24   coming from out of state, in a $20 million case, that's a lot of lawyers."  (Rep.'s Tr. of Mar. 24, 2014

25   Mot. for Summary J.)

26          The Court's review of the billing records reveals some duplication of work due to the

27   number of attorneys and firms staffed to the case.  The Court will adjust the hours sought.  *See*

28   *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 2005 U.S. Dist. LEXIS 32621 at *4-6 (E.D. Va. June 28,

2005) (reducing fees by 20% "when multiple attorneys billed for tasks that could have been accomplished more efficiently").

Of the 16,731.7 hours Defendant's lawyers billed to this case, 549.55 were billed by attorneys who spent less than 100 hours on the matter.  Because such transient involvement is inefficient, the Court excludes those hours in the following chart (amounts already omitted by Defendant are not included in this chart).

| Biller | Firm | Hours | Amount |
|--------|------|-------|--------|
| ACC | Ostrolenk | 43.6 | $18,094.00 |
| AM | CPH | 20.7 | $5,175.00 |
| AYM | Ostrolenk | 43.2 | $10,648.80 |
| DS | CPH | 19.5 | $5,325.00 |
| DXS | Ostrolenk | 18.1 | $4,461.65 |
| EZA | CPH | 58.8 | $17,439.48 |
| GXB | Ostrolenk | 78.6 | $29,824.00 |
| JYK | Ostrolenk | 31.4 | $8,412.90 |
| KWK | Ostrolenk | 61.4 | $15,617.95 |
| KXS | Ostrolenk | 5.5 | $2,057.00 |
| LCD | Ostrolenk | 5.5 | $2,970.00 |
| MHF | Ostrolenk | 6 | $2,250.00 |
| MP | Ostrolenk | 37.75 | $19,252.50 |
| MPH | Ostrolenk | 3.8 | $1,140.00 |
| SJQ | Ostrolenk | 7.3 | $3,029.50 |
| SPM | Ostrolenk | 53.6 | $13,936.00 |
| SSD | CPH / Ost. | 49.5 | $14,473.43 |
| TMS | CPH | 1.5 | $307.50 |
| Trela | Sidley | 3.8 | $3,391.50 |
| **Total before Apportionment:** | | **549.55** | **$177,806.20** |

| Apportioned Total: | $116,341.50 |
|---|---|

The Court therefore reduces the fees here by $116,341.50.

The Court next makes an adjustment to compensate for general overstaffing. There were too many lawyers working on the same task, too many lawyers coming up to speed, and too many lawyers attending depositions and hearings. The Court will apply a 10% reduction to fees incurred after Sidley joined the case on Nov. 27, 2013. *See Action Star Enter. v. Kaijet Tech. Int'l*, No. CV-12-08074 BRO at *11 (C.D. Cal. Jul. 7, 2014) (applying a 15% across-the-board reduction "in order to compensate for any inefficiencies of litigation"). This is a further reduction of $307,615.41.

### 2.3 Block Billing

Plaintiff objects to the "block billing" used by Defendant, arguing that it obscured inefficiencies by making it difficult to ascertain how much time was spent on a given task. The term "block billing," as used by Plaintiff, means "each lawyer or other timekeeper providing a single description of a day's worth of activities and a total number of hours for that day." Plaintiff cites, as an example and with the following emphasis, a March 20, 2014 billing entry made by "MFH" at Ostrolenk.

> Correspondence with C. Park regarding J. Chang and J. Sienkiewicz deposition designations; review F.R. Evid 615 and related cases regarding C. Park as URC's corporate designation for purposes of attending hearing and trial; teleconference and correspondence with T. Chandler regarding P. Arling deposition designations; review Court's Order on UEI's ex parte motion; conference with D. Miro regarding same; review case documents regarding use at trial; review URC's Trial Exhibit List; review Fed.

R. Civ. P. Rule 32 regarding use of depositions at trial; <u>meeting with Ostrolenk Litigation team regarding trial exhibits; correspondence with T. Donahey and Sidley Team regarding finalizing witness and exhibit lists for exchange with UEI</u>; exhibit list for exchange with UEI; <u>review Sidley's revised drafts of witness list and exhibit list; correspondence with litigation team and C. Park regarding same; review Sidley's revisions to deposition designations; meeting with K. Barkaus and correspondence with C. Chi regarding same</u>; correspondence with C. Park and C. Chi regarding witness list

This entry is representative of commonly used billing practices. Indeed, this entry is more detailed than the Court might have expected. It appears that Plaintiff seeks "task billing," allocating every moment of attorney time to a plethora of specific tasks. That level of specificity improperly creates "a pretense of mathematical precision" criticized by Justice O'Connor. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 189. It also improperly makes trial courts "green-eyeshade accountants" seeking accounting precision rather than rough justice. *Fox*, 131 S. Ct. at 2216. It is inefficient.

Plaintiff argues that the underlined portions show time spent coordinating between Ostrolenk and Sidley, but that the billing format makes it impossible to tell how many of these hours were devoted to this task. Further, Plaintiff argues that some entries were so vague as to make the tasks accomplished unascertainable, like billing hundreds of hours for "general litigation support."

True, Courts have reduced fees due to block billing. *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). But as noted, the billing specificity Plaintiff requests is not necessary. Indeed, a court may include amounts "block-billed" without a reduction "because counsel 'is not required to record in great detail how each minute of his time was expended.'" *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) (quoting *Hensley*, 461 U.S. at 437 n.12). Here, Defendant has endeavored to apportion and describe billed hours appropriately, and the Court has been able to reduce the hours sought to account for inefficiency. No further reduction for billing specificity is required.

12

### 2.4     Conclusion - Adjustment to Fees

The court deducts $92,537.01 for the patent agent billing rate, $116,341.50 billed by lawyers with transient involvement, and $307,615.41 for general overstaffing, for a total fee reduction of $516,493.93. This leaves an award for fees of $4,144,847.62.

## 3.     EXPENSES

Defendant also requests an award of $860,911.50 in expenses, which it apportioned in the same manner as the attorney fees. (Dkt. No. 502 at 16-18.) Generally, expenses may be awarded under section 285. *Cent. Soya*, 723 F.2d at 1578 ("[W]e conclude that the award of expenses was properly within the scope of § 285."). After *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), district courts have continued to recognize that non-expert, non-taxable costs are compensable under section 285. *See Kilopass Tech., Inc. v. Sidense Corp.*, 2015 WL 30650 at *43 (N.D. Cal. Mar. 11, 2015) (awarding non-taxable travel and lodging expenses and document delivery fees, but not expert fees). The Court first turns to expert fees, which are treated differently than other expenses.

### 3.1     Expert Fees

Expert witness fees are only awardable here if there is "fraud on the court or an abuse of the judicial process." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994); *see also Kilopass Tech., Inc.*, 2015 U.S. Dist. LEXIS 30650 at *43 (continuing to cite *Amsted Indus., Inc.* post-*Octane* for the proposition that "[i]n the absence of fraud or abuse, a court may not award expert fees above the 28 U.S.C. § 1821 statutory cap"); *cf. Worldwide Home Prods. v. Bed, Bath & Beyond, Inc.*, 2015 U.S. Dist. LEXIS 46569 *11 (S.D.N.Y. Apr. 9, 2015) (citing *Amsted Indus., Inc.* and stating that expert fees are not authorized under section 285). This limitation on the Court's ability to make prevailing parties whole in "regular" exceptional cases flows from the Supreme Court's

decision in *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991). There, the Court held that 42 U.S.C. section 1988, which provided that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," did not extend to expert fees beyond the paltry allowance of 28 U.S.C. section 1821(b). *Id.* at 85 n.1. While Congress moved quickly to fill that gap in 42 U.S.C. section 1988, it did not do so for 35 U.S.C. section 285. *Amsted*, 23 F.3d at 376; *see also* McDonald & Doscotch, *Why Aren't Expert Fees Recoverable In Patent Cases? Correcting an Anomaly in the Patent Fee Statues*, 84 J. Pat. & Trademark Off. Soc'y 255 (2002) (proposing a legislative fix). A statutory amendment could allow the courts to further deter inappropriate patent litigation without micro-managing cases, but there has been none.

Of course, the Court may award expert witness fees as a sanction under the Court's inherent powers. *Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). But the circumstances outlined in *Amsted* must be present to award such sanctions. To do otherwise would fail to honor the perhaps unintended distinctions in the United States Code identified in *West Virginia University Hospitals*. "Accordingly, not every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012). And while the Court held that this case was exceptional, it did not conclude that it was *"Amsted* exceptional." *See Amsted*, 23 F.3d at 378 (noting that a court may invoke its inherent powers if "fraud has been practiced upon it, or that the very temple of justice has been defiled") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

Accordingly, the Court does not award expert fees in this case. This reduces the expenses sought by $342,958.27 (after apportionment).

### 3.2 Other Expenses

Plaintiff argues that travel expenses were inflated by routinely sending multiple lawyers across the country, and requests a 30% reduction to this expense of $160,543.87. Defendant responds that there is no basis to exclude travel costs because "URC is based in New York and

depositions of its employees took place in New York. By retaining the New York-based Ostrolenk firm, URC actually reduced its travel costs."

The Court has noted that an excessive number of attorneys traveled across the country to appear in court. Because the problem of excessive travel costs largely is attributable to the problem of overstaffing, the same 10% reduction will be applied here.

Finally, Plaintiff argues that $195,149.69 in costs included in Defendant's calculation are taxable costs already claimed in Defendant's Bill of Costs submitted to the Clerk. Because the Bill of Costs is still pending and, according to Defendant, "it is unclear what costs the Clerk will find taxable," Defendant responds that it does not seek to "double dip" on taxable costs. Because the Court here awards costs and expenses under section 285, the question of what costs are taxable can be bypassed. The Court awards the entire amount requested minus the 10% adjustment. Defendant shall withdraw its application to the Clerk for costs.

In sum, the Court will deduct 10% of all allowable apportioned expenses incurred on or after November 27, 2013, which is a reduction of $39,411.17.

### 3.3    Conclusion - Adjustment to Expenses

The Court awards expenses of $478,542.06. The Court notes that this amount for non-expert expenses is about 10% of the fee award, which is typical.

## 4.    AMOUNTS NOT TIMELY REQUESTED

The Court ordered that "Defendant shall file all it deems necessary to support its fees no later than" 14 days after the Fee Order issued.

Defendants filed their supplemental submission concerning fees by the deadline, including all of the fees and expenses discussed in Sections 2 and 3. Defendants included a footnote purporting to reserve the right to *supplement* the *supplement* with "all fees and expenses incurred up to the date of

March 24, 2015, the date this fee submission was submitted, some of which have not been invoiced."

In its second supplemental submission regarding attorney fees, Defendant requested an additional $192,605.29 in fees and expenses. Plaintiff objects to these additional amounts as not complying with the Court's Order that Defendant file "all it deems necessary to support its fees" by the deadline specified.

The Court denies these second supplemental fees for two reasons. First, their late submission failed to comply with the Court's Order. Second, the amount sought is clearly unreasonable for three weeks of work that occurred not only after Defendant won the case, but after Defendant had already briefed the exceptional case issue. While the Court agrees that Defendant is likely correct in arguing that it did not incur excessive fees on the hope of recovering fees, the discipline imposed by paying out of pocket disappears once a party knows that the other party is on the hook. That may be what happened here. But whatever the reason for the large post-victory bill, the Court declines to award more.

## 5. CONCLUSION

Defendant timely requested $4,661,341.55 in attorney fees and $860,911.50 in expenses. The Court makes the following adjustments:

| Attorney fees requested: | $4,661.341.55 |
|---|---|
| Patent agent rate reduction: | ($92,537.01 ) |
| Transient involvement reduction: | ($116,341.50 ) |
| Remaining fees before inefficiency reduction: | $4,452,463.03 |
| Inefficiency reduction (10% post 11/26/13) | ($307,615.41) |
| **Total fees granted:** | **$4,144,847.62** |
| Expenses requested: | $860,911.50 |
| Expert fee reduction: | ($342,958.27) |
| Inefficiency reduction (10% post 11/26/13) | ($39,411.17) |

| | |
|---|---|
| **Total expenses granted:** | **$478,542.06** |
| **Total award (fees and expenses):** | **$4,623,389.68** |

## DISPOSITION

The Court awards Defendant $4,144,847.62 in attorney fees and $478,542.06 in expenses. The total award is thus $4,623,389.68.

Defendant shall withdraw its application to the Clerk to tax costs.

IT IS SO ORDERED.

DATED: September 4, 2015

_____

Andrew J. Guilford
United States District Judge